## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARLENE HOPKINS, Individually, as )
Wrongful Death Heir, and as Successor-in- )
Interest to NORMAN HOPKINS, JR., )
Deceased; and MICHELLE HOPKINS, and )
MICHAEL HOPKINS, as Legal Heirs of )
NORMAN HOPKINS, Deceased, THE )
FLINTKOTE COMPANY, THE OFFICIAL )
COMMITTEE OF THE ASBESTOS )
PERSONAL INJURY CLAIMANTS, and )
JAMES J. MCMONAGLE as the LEGAL )
REPRESENTATIVE FOR FUTURE )
ASBESTOS PERSONAL INJURY )
CLAIMANTS, )
                                     )
              Plaintiffs,       )   Civil Action No. 06-298 (JJF)
                                     )
      vs.                           )
                                     )
PLANT INSULATION COMPANY; )
UNIROYAL HOLDING, INC.; IMPERIAL )
TOBACCO CANADA LIMITED; )
SULLIVAN & CROMWELL LLP; and )
DOES 1 through 100, )
                                     )
             Defendants.     )
_____)

### REPLY OF IMPERIAL TOBACCO CANADA LIMITED
### IN SUPPORT OF ITS EMERGENCY MOTION
### FOR IMMEDIATE ENTRY OF A PROVISIONAL ORDER

Imperial Tobacco Canada Limited ("ITCAN") hereby submits this Reply in Support of its Emergency Motion (the "Motion") for Immediate Entry of Provisional Order, responding briefly to the Response filed by The Flintkote Company ("Flintkote") on Friday, May 12, 2006 (the "Response"). This brief reply is limited to the issue of whether this Court should enter the requested provisional transfer order. ITCAN reserves

the right, and intends, to file a reply to Flintkote's further response, which Flintkote indicates it will file on May 19, 2006.

## I. PROCEDURAL STATUS UPDATE

Flintkote filed a motion in the United States District Court for the Northern District of California seeking remand of the Pending Action to California Superior Court ("Remand Motion"). Flintkote filed its Remand Motion on the same day that ITCAN objected to the assignment of a magistrate judge to the case. The Remand Motion was set for hearing on June 21, 2006, but an order vacating that hearing was issued on Thursday, May 11, 2006 after ITCAN had already filed the instant Motion. The case has now been assigned to United States District Court Judge Marilyn H. Patel. Judge Patel is available to hear motions on June 19, 2006, and ITCAN will notice its motion for a stay of proceedings or, in the alternative, for a transfer to this Court on that date. ITCAN anticipates that Flintkote will also have its Remand Motion heard on the same date. Accordingly, whereas the Remand Motion was originally set for hearing on June 21, it will now likely be heard two days earlier, on June 19.

## II. REPLY

It appears that Flintkote and ITCAN agree that this Court should hear the instant Motion and determine whether this Court should transfer the Pending Action to Delaware. (Flintkote Response, at pp. 7-8). Indeed, Flintkote requests a hearing on the Emergency Petition as soon as possible after it files its response. Id. Thus, Flintkote recognizes, as it must, that this Court is the only court in any jurisdiction that can determine the transfer issues implicated by 28 U.S.C. § 157(b)(5). See 28 U.S.C. § 157(b)(5) (requiring determination of venue by district court in district in which debtor's bankruptcy is pending). As such, ITCAN believes that all issues related to the venue of

2

the Pending Action should be centralized in this Court -- the one Court that is capable of deciding all of the relevant issues. The requested provisional transfer order would simply preserve this Court's ability to deal with these issues on a time table of its choosing, without the concern that any activity in the California district court would deprive, impair or otherwise complicate this Court's ability to decide the issues.

Notwithstanding Flintkote's agreement that this Court should hear the instant Motion as quickly as possible, it nonetheless appears that Flintkote will continue to pursue its Remand Motion in California. If Flintkote were willing to agree to ITCAN's requested stay of proceedings in California pending a final ruling by this Court, there would be no need for a provisional transfer order. In the present circumstances, however, a provisional order will serve the purpose of protecting this Court's jurisdiction and ability to rule on the issues that are within its exclusive province. Flintkote posits that this Court could still rule on the Section 157(b)(5) issues even if the Pending Action is remanded back to the California Superior Court. Why would anyone favor such a back-and-forth procedure that would only serve to waste judicial resources? ITCAN's purpose (and the most common-sense approach) is to have these issues decided on the front end of the case, by the only Court that can decide them. There is no reason to proceed in any other manner.

As noted in the instant Motion and supporting documents, a provisional transfer order is not unusual in the context of Section 157(b)(5). Indeed, Flintkote concedes that such a provisional order was entered in this District in the *Federal Mogul* case. (Flintkote Response, at p. 6).[1] For the reasons noted above, the requested provisional

---

[1] As discussed by ITCAN in the instant Motion and in the Emergency Petition, provisional transfer orders have routinely been entered by district courts pursuant to 28 U.S.C. §157(b)(5). *See In re*

transfer order makes imminent sense in this case. If the Court enters the provisional order, all issues will be preserved and neither party will be prejudiced in the least with respect to those issues that each wants decided. Indeed, all issues related to venue of the Pending Action can then be decided in a single forum. There is no sustainable reason to disagree with this procedure.

[Remainder of Page Left Intentionally Blank]

---

*Federal-Mogul Global, Inc.*, 300 F.3d 368, 374 (3d Cir. 2002); *In re A.H. Robins Co.*, 788 F.2d 994, 1015-1016 (4th Cir. 1986); *In re Dow Corning Corp.*, 1995 WL 495978 (Bankr. E.D. Mich. 1995) (Exhibit A).

WHEREFORE, for the reasons set forth herein and in the instant Motion, the Emergency Petition and the Opening Brief, ITCAN respectfully requests that the Court immediately enter a provisional order in the form attached to the Emergency Petition as Exhibit A and set a briefing schedule for a hearing on ITCAN's request for a final order transferring the Pending Action to this District.

Dated:  May 15, 2006          MORRIS, JAMES, HITCHENS & WILLIAMS LLP

_____

Stephen M. Miller (#2610)
Brett D. Fallon (#2480)
Carl N. Kunz, III (#3201)
222 Delaware Avenue, 10th Floor
Post Office Box 2306
Wilmington, Delaware  19899-2306
Telephone: (302) 888-6800
Telecopier: (302) 571-1750
Email: smiller@morrisjames.com
Email:  bfallon@morrisjames.com
Email:  ckunz@morrisjames.com

and

KING & SPALDING LLP
L. Joseph Loveland
James A. Pardo, Jr.
Mark M. Maloney
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone: (404) 572-4600
Telecopier: (404) 572-5141
Email: jloveland@kslaw.com
Email: jpardo@kslaw.com
Email: mmaloney@kslaw.com
*Attorneys for Defendant Imperial Tobacco Canada Limited*

# EXHIBIT A

**Westlaw.**

Not Reported in B.R.                                                                Page 1
Not Reported in B.R., 1995 WL 495978 (Bankr.E.D.Mich.)
**(Cite as: 1995 WL 495978 (Bankr.E.D.Mich.))**

**H**

Only the Westlaw citation is currently available.

United States Bankruptcy Court, E.D. Michigan.
In re DOW CORNING CORPORATION, Debtor.
**95-20512.**

Aug. 9, 1995.

*REPORT AND RECOMMENDATION ON
MOTIONS TO TRANSFER PURSUANT TO 28
U.S.C. §
157(b)(5)*

ARTHUR J. SPECTOR, Bankruptcy Judge.

*ISSUE*
*1 Does the Court have the authority under 28
U.S.C. § 157(b)(5) to order the transfer of lawsuits
outside the bankruptcy court?

*BACKGROUND*
Over a period of nearly 30 years, Dow Corning
(alternatively "the Debtor") manufactured silicone gel
breast implants and supplied raw silicone to other
implant manufacturers. It ceased doing so in 1992, in
the wake of thousands of lawsuits that had been filed
against it in federal and state courts throughout the
country and in foreign courts all over the world by
individuals alleging personal injury stemming from
the use of the implants. Dow Corning's shareholders,
Dow Chemical Co. and Corning, Inc., were named as
defendants in many of these lawsuits, as were
physicians, health care facilities, and companies
which, like Dow Corning, manufactured silicone gel
breast implants. These companies include Medical
Engineering Corporation, Bristol-Myers Squibb
Company, Baxter Healthcare Corporation, Baxter
International, Inc., and Minnesota Mining and
Manufacturing Company (collectively, the "implant
co-defendants").

The federal lawsuits, wherein jurisdiction was based
on diversity of citizenship under 28 U.S.C. § 1332,
were transferred to the Northern District of Alabama
pursuant to an order issued by the Judicial Panel on
Multidistrict Litigation. *See In re Silicone Gel Breast
Implants Products Liability Litigation, 793 F. Supp.
1098 (J.P.M.L. 1992); 28 U.S.C. § 1407.* The
objective of the transfer was to allow "for

coordinated or consolidated pretrial proceedings,"
thus promoting "the goal of a just, efficient and
expeditious resolution of the litigation." *Silicone Gel
Breast Implants, 793 F. Supp. at 1101.*

The judge presiding over the centralized federal
cases is the Honorable Sam C. Pointer, Jr. On
September 1, 1994, Judge Pointer approved a
proposed settlement reached by a plaintiffs' "steering
committee" and the various defendants in the actions,
including Dow Corning. Plaintiffs were free to
choose whether they wished to be bound by the terms
of this settlement. According to the Debtor,
approximately 6,000 plaintiffs have thus far chosen
not to participate in the settlement, opting instead to
pursue their own actions on an individual basis (the
"opt-out lawsuits" [FN1]).

Dow Corning filed a voluntary petition for relief
under chapter 11 of the Bankruptcy Code, 11 U.S.C.
§ 101 et seq., on May 15, 1995. This action
automatically stayed the continuation of the implant
lawsuits pending against Dow Corning, but extended
no such protection to the implant co-defendants or
the Debtor's shareholders. *See 11 U.S.C. § 362(a).* In
response to Dow Corning's bankruptcy, the implant
plaintiffs in many cases obtained an order severing
their claims against Dow Corning so that they could
proceed unimpeded against the non-debtor co-
defendants.

On May 22, 1995, the Debtor commenced adversary
proceeding #95-2035, in which it sought an order that
would in effect bring its shareholders within the
scope of the § 362(a) litigation stay by enjoining the
opt-out plaintiffs from litigating their claims against
Dow Chemical and Corning. *See, e.g., A.H. Robins
Co. v. Piccinin, 788 F.2d 994, 999, 1002-03 (4th
Cir.), cert. denied, 479 U.S. 876 (1986)* (Litigation
against a non-debtor entity may be enjoined under 11
U.S.C. § § 362(a) or 105.). Dow Corning included in
its complaint two motions, one for a temporary
restraining order to stay the several trials which were
set to begin in a matter of days, and the other for a
preliminary injunction. After a two-day trial, the
TRO request was denied on May 26, without
prejudice to Dow Corning's pending motion for a
preliminary injunction, which was scheduled for
hearing on June 8. On that date, Dow Corning asked
for a continuance, citing the fact that the implant co-
defendants had, in the few days preceding the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

hearing, removed to federal courts hundreds of opt-out actions pursuant to 28 U.S.C. § 1452(a). Dow Corning had decided to join in this removal campaign and, consequently, it was not prepared to proceed to hearing on its request for a preliminary injunction. I denied the request for a continuance and dismissed the proceeding without prejudice for lack of progress.

*2 On June 12, the Debtor filed a motion pursuant to 28 U.S.C. § 157(b)(5), seeking an order transferring to this district those opt-out lawsuits in which both it and its shareholders were named defendants. Included in the motion was a request that a provisional transfer be ordered immediately and on an *ex parte* basis, pending a hearing at which it could be determined whether the transfer order should be made permanent. Dow Corning's rationale in requesting provisional relief goes as follows. Although most or all of the implant lawsuits had been removed to federal court, in many instances the implant plaintiffs had filed, or were expected to file, a motion for remand to state court. *See, e.g., McCratic v. Bristol-Myers Squibb & Co.,* 183 B.R. 113, 115 (N.D. Tex. 1995) (remanding an implant case to state court based in part on 28 U.S.C. § 1452(b)). Fearing that remanded cases might not be subject to transfer under § 157(b)(5), Dow Corning asked for the provisional transfer to preserve the status quo while the court weighed the merits of its motion.

On June 13, I entered an order determining that the lawsuits identified in Dow Corning's motion were within the scope of § 157(b)(5), thus triggering the bankruptcy clerk's obligation to submit the motion and related pleadings to the clerk of the district court. *See* E. D. Mich. LR 150.1(f)(1). Included in my order was a recommendation that the request for a provisional transfer order be granted, but only with respect to claims asserted against Dow Corning.

The motion was assigned by random draw to the Honorable Denise Page Hood. On the heels of Dow Corning's motion, the implant co-defendants filed their own motions seeking transfer under § 157(b)(5) of opt-out lawsuits in which they are a named defendant. The theory underlying the motions was that, to the extent implant plaintiffs recovered damages from the implant co-defendants, they would in turn have a claim against the Debtor by way of contribution, subrogation or indemnity. These motions were also assigned to Judge Hood.

Adopting my recommendation, Judge Hood entered an order on July 5, which provisionally transferred to her court the opt-out lawsuits pending against Dow Corning, and which set for hearing the motions filed by Dow Corning and the implant co-defendants. At this hearing, conducted July 31, Judge Hood reserved decision after patiently considering the views expressed by all interested parties on the issues presented. For the reasons which follow, I recommend that the motions be denied.

*PREFATORY DISCUSSION*
The plaintiffs in the opt-out lawsuits hold claims against Dow Corning which are unliquidated. This poses a problem in chapter 11 for at least three reasons. First, the determination as to whether a class of creditors has accepted or rejected a proposed plan of reorganization is made with reference to the dollar amount of the claim held by each creditor in the class. *See* 11 U.S.C. § 1126(c).

Second, a plan generally cannot be confirmed if its implementation is "likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." 11 U.S.C. § 1129(a)(11). If a plan proposes to pay a certain percentage of claims held by a particular class of creditors, then of course the bankruptcy judge has no sound basis for making a finding that it is "feasible" for purposes of § 1129(a)(11) if the amount of such claims is unknown.

*3 Third and most obvious, a plan is difficult to formulate, and may prove impossible to carry out, if claims to be paid thereunder are for amounts that have yet to be liquidated. This is of course particularly true where liability could run the gamut from zero to millions of dollars per claim.

If liquidation of a claim "would unduly delay the administration of the case," then the claim is to be "estimated for purpose of allowance." 11 U.S.C. § 502(c)(1). Unliquidated claims can apparently also be estimated solely "for the purposes of confirming a plan" (as contrasted with estimations "for purposes of distribution"). 28 U.S.C. § 157(b)(2)(B).

It is with an eye toward claim estimation that Dow Corning asserts the need for a transfer order. Should its motion be granted, Dow Corning says it would then seek consolidation of the transferred lawsuits pursuant to F.R.Civ.P. 42(a), for the purpose of holding what it characterized as a "common issue causation trial." Dow Corning's Brief at p. 17. At this trial, the implant plaintiffs would bear the burden of "establish[ing] by a preponderance of the evidence that silicone gel-filled breast implants can, as a matter of established medical science, be a cause of certain

Not Reported in B.R.
Not Reported in B.R., 1995 WL 495978 (Bankr.E.D.Mich.)
(Cite as: 1995 WL 495978 (Bankr.E.D.Mich.))

Page 3

recognized immunological, neurological, or rheumatological disorders." *Id.* According to the Debtor, my "task ... [of] estim[ating] ... the breast implant claims for purposes of confirmation [would] be substantially facilitated" by such a trial. *Id.* at 18. Proceeding in this fashion would save "time, money and other resources of Dow Corning, the court and the claimants themselves." *Id.* The implant co-defendants endorsed Dow Corning's proposal.

Opponents of the motions included the Official Committee of Tort Claimants, individual implant plaintiffs, and physicians named as defendants in the opt-out lawsuits. Among other things, they stressed the hardships that would be visited upon various parties should the lawsuits be transferred, challenged the fairness, wisdom and practicality of the proposed causation trial, and argued that under no circumstances should the transfer extend to claims asserted by implant plaintiffs against the implant co-defendants or Dow Corning's shareholders.

To put § 157(b)(5) in its proper context, one should first briefly consider how claims are "handled" in a chapter 11 bankruptcy, and how that process interrelates with debtor-creditor litigation that may be pending when the bankruptcy case is commenced. A "claim" is defined by the Code as a "right to payment." 11 U.S.C. § 101(5). A party with a claim against the debtor or the bankruptcy estate is a "creditor." 11 U.S.C. § 101(10). A reorganization plan need not make provision for a creditor unless its claim is "allowed." *See* 11 U.S.C. § § 1126(a) and 1129(a), (b). For a claim to be allowed, a "proof of claim" must either be filed, or be deemed to have been filed, in the bankruptcy court. *See* 11 U.S.C. § § 501 and 502; F.R.Bankr.P. 3001, 3002, and 3003. If nobody objects to the proof of claim, the claim to which it relates "is deemed allowed." 11 U.S.C. § 502(a). If an objection is filed, a hearing is held, at which the court determines whether, and the extent to which the claim is to be allowed. *See* 11 U.S.C. § 502(b). Upon confirmation of the plan, the debtor is generally discharged from liability on pre-confirmation claims, whether or not a proof of claim relating thereto was filed. *See* 11 U.S.C. § § 1141(d)(1)(A) and 101(12).

*4 This is the process by which all claims are allowed in bankruptcy. Allowance of a personal injury or wrongful death claim follows this procedure. It differs only when the time comes to try the question of allowance. With respect to all other claims, the bankruptcy judge hears and determines the validity of the claim regardless of its origin--state or federal, common or statutory law. This is true because allowance of claims generally is a core proceeding. 28 U.S.C. § 157(b)(2)(B). However, the allowance of a personal injury or wrongful death claims is specifically given to the district judge. 28 U.S.C. § 157(b)(5). Another difference is that the right to a jury trial in personal injury or wrongful death claims is preserved. 28 U.S.C. § 1141(a). What is important to remember, however, is that the district judge is not trying a civil action, but is hearing and determining a contested matter [FN2] --the objection to the allowance of a claim--and sits as a bankruptcy judge would in such a capacity.

The chronology for the allowance of a claim in a chapter 11 case is: (1) a deadline for the filing of proofs of claim is fixed; (2) a proof of claim is filed; (3) an objection to the allowance of the claim is filed; (4) if it seems advisable, a Rule 16 conference is scheduled; (5) discovery is conducted; (6) trial. If a series of claims presents a common issue, the claims may be heard and determined in a consolidated proceeding brought pursuant to F.R.Bankr.P. 7042, which incorporates into bankruptcy practice F.R.Civ.P. 42.

Although the bankruptcy "system" sets up its own procedure for determining the validity of claims against the debtor, the commencement of a case under title 11 does not necessarily terminate any lawsuits which might then be pending in non-bankruptcy forums, even if they are in essence designed to make the same determination. Such a lawsuit is only "suspended" pursuant to § 362(a), and its prosecution can resume if the plaintiff satisfies the court that there is "cause" for terminating or modifying the stay. *See* 11 U.S.C. § 362(d)(1).

For purposes of § 362(d)(1), "cause" includes a determination that the preferable course of action would be to allow the litigants to resume their battle on non-bankruptcy turf. *See* H.R. Rep. 95-595, 95th Cong., 1st Sess. 341 (1977) ("[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere."); 2 *Collier on Bankruptcy,* ¶ 362.07[4] (15th ed. 1994) (collecting cases for the proposition that "cause" includes a determination that "the liquidation of a claim may be more conveniently and speedily determined in another forum").

In effect, then, the implant plaintiffs are asserting

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                              Page 4
Not Reported in B.R., 1995 WL 495978 (Bankr.E.D.Mich.)
**(Cite as: 1995 WL 495978 (Bankr.E.D.Mich.))**

claims against Dow Corning in two separate venues--the bankruptcy court (by means of the proofs of claim filed or to be filed [FN3]) and the non-bankruptcy courts in which the lawsuits are pending (but dormant). It is with this thought in mind that one should approach the task of interpreting § 157(b)(5), which provides:

> *5 The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

### CONCLUSION

The first and oft-repeated rule of statutory construction is that the task of interpreting the meaning of a statute must begin "with the language of the statute itself." *United States v. Ron Pair Enters., 489 U.S. 235, 241 (1989).* Section 157(b)(5) merely states that personal injury and wrongful death claims against the bankruptcy estate are to be tried in the district court in the bankruptcy district [FN4] or in the district where the claim arose in the discretion of the district judge of the bankruptcy district. It is important to also note what does not appear in this section. What nowhere appears is the word "transfer." For the reasons which follow, I believe that this omission was intended since the statute was meant solely to allocate the responsibility of liquidating a qualifying claim filed in the bankruptcy case between the bankruptcy and district judges.

### RATIONALE

Although not explicitly stated, it's obvious that § 157(b)(5) contemplates personal injury claims [FN5] asserted against the debtor, and not *all* personal injury claims. This is logical when one looks at the jurisdictional legislation as a whole, as directed by *United Savings Ass'n v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371 (1988)* ("Statutory interpretation is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme --- because the same terminology is used elsewhere in a context that makes its meaning clear ...."). The term "personal injury and wrongful death claims" in § 157(b)(5) is preceded by the same term in subsection (b)(2) of the same section. There, *see below,* the interchangeable use of the terms "claims against the estate" and "claims" indicates their unity:

> (b)(2) Core proceedings include, but are not limited to--
> (B) Allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11.

And since the term "personal injury or wrongful death claims" again appears in the same statute, a mere three paragraphs away, in a manner which complements the carved-out exception in (b)(2), it is clear that Congress meant these terms to refer only to claims against the estate. The real question is whether the court's venue-fixing authority under this statute relates only to the Code-specified procedure for handling objections to claims, or if it also encompasses litigation pending in non-bankruptcy forums. A number of considerations lead me to conclude that the statute refers only to claims asserted in the bankruptcy court.

*6 Strong support for this conclusion is found in the overall scope, structure and text of § 157. *See Timbers, supra; Kelly v. Robinson, 479 U.S. 36, 43 (1986)* ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." (Internal quotation marks and citations omitted)). The pervasive theme of that section, which is entitled "Procedures," is the respective duties/responsibilities of the bankruptcy judge vis-à-vis the district judge presiding over the bankruptcy case. Sub-section (a) states that the "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Under sub-section (d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy judges] ... for cause shown." Sub-section (e) permits the bankruptcy judge to conduct a jury trial "if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." Sub-sections (b) and (c) specify the circumstances under which a bankruptcy judge can enter judgment in a proceeding, as opposed to simply making a recommendation to the district judge. *See, e.g., In re Orion Pictures Corp., 4 F.3d 1095, 1100-1101 (2d Cir. 1993), cert. dismissed, 128 L.Ed.2d 88 (1994).* Given the tenor of § 157, one would certainly not expect to find buried in its midst a provision which authorizes the "bankruptcy district court" to wrest cases from non-bankruptcy courts, whether state or federal.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 1995 WL 495978 (Bankr.E.D.Mich.)
(Cite as: 1995 WL 495978 (Bankr.E.D.Mich.))

Page 5

More specifically, the focus of sub-section (b) counsels a modest interpretation of paragraph (5) therein Section 157(b) is primarily concerned with "core proceedings": what they are, what it means to be one, etc. Although the quoted term is hardly self-defining, one thing which is incontrovertible is that the core/non-core distinction has relevance only to proceedings which are *in the bankruptcy court*. It therefore seems unlikely that the reach of paragraph (b)(5) extends beyond such proceedings.

The text of § 157(b)(5) itself is also instructive, albeit more so for what is not stated than for what is. To fully appreciate the statute's telling omissions, consider first a pair of federal statutes which clearly *do* concern the transfer of litigation to a different forum:

> A party may remove a claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation ... upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred ....
> *7 (b) Such coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation....

28 U.S.C. § 1407(a), (b).

Whereas § 1407(a) refers to "civil actions" and § 1452(a) refers to "claims, "causes of action," and "civil actions," § 157(b)(5) speaks only of "claims," a term which is particularly associated with the bankruptcy process. Because it excepts from its scope tax court and certain governmental proceedings, and explicitly states that those proceedings which are within its scope can be "remove[d] ... to the district

court," it is obvious that § 1452(a) is directed at non-bankruptcy proceedings, and that it provides a mechanism to transfer those proceedings to the appropriate district court. Similarly, § 1407(a) is explicit in authorizing the transfer of cases from various district courts to a single district court.

Section 157(b)(5), on the other hand, makes no allusion to the forum in which the claim is being asserted. Nor does that statute say anything about claims being "transferred" or "removed" to the bankruptcy forum. [FN6]

The power of one court to unilaterally appropriate control over a lawsuit filed in another court is highly unusual. [FN7] If Congress wanted to vest such extraordinary authority in the bankruptcy district court, it presumably would do so using statutory language which, like that found in § 1407(a), is explicit, clear and unmistakable. *Cf. Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) ("[T]he ordinary rule of statutory construction [[[is] that if Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'" (citation omitted)); *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific .... The Court has followed this rule with particular care in construing the scope of bankruptcy codifications."); *Holmes Fin'l Assocs. v. Resolution Trust Corp.*, 33 F.3d 561, 564 (6th Cir. 1994) ("... Congress' expectation of (or desire for) exclusive federal jurisdiction, expressed only in legislative history, would be 'assuredly not enough' to divest the state courts of their concurrent jurisdiction." (quoting *Tafflin v. Levitt*, 493 U.S. 455, 472 (1990) (Scalia, J., concurring))). [FN8] With regard to the question of its applicability to non-bankruptcy proceedings, § 157(b)(5) has none of these qualities. [FN9]

Moreover, there is no suggestion in the legislative history that § 157(b)(5) was meant to vest in bankruptcy district courts the power to transfer personal injury claims pending in non-bankruptcy courts. The rationale underlying the statute was explained as follows:

> *8 Bankruptcy courts have traditionally estimated unliquidated contingent claims and should have this power for most claims ... But there is a strong argument that personal injury tort claimants, who

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 1995 WL 495978 (Bankr.E.D.Mich.)
(Cite as: 1995 WL 495978 (Bankr.E.D.Mich.))

Page 6

of course do not voluntarily become involved with a defendant, should have the protection of having any final order entered by an Article III district court judge after *de novo* review by the district judge of any findings of fact or conclusions of law as to which any party has objected.

130 Cong. Rec. S 7621 (daily ed. June 29, 1984; remarks of Senator DeConcini) (*quoted in* 1 *Collier on Bankruptcy* ¶ 3.01[3][d], p. 3-85 n.220 (15th ed. 1995)). Thus the apparent purpose of § 157(b)(5) was simply to ensure that, *with respect to those personal injury claims which are litigated in the bankruptcy forum,* the claimant will have the benefit of a full trial before the Article III bankruptcy district judge, rather than the Article I bankruptcy judge. In light of that narrow goal, expanding § 157(b)(5) to claims pending outside the bankruptcy forum is neither necessary nor appropriate.

According to the Second and Fourth Circuits, "the manifest purpose of section 157(b)(5) was 'to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.''" *In re Pan American Corp.,* 950 F.2d 839, 845 (2d Cir. 1991) (quoting *A.H. Robins,* 788 F.2d at 1011 (which in turn quoted from 130 Cong. Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S.Code Cong. & Adm. News at 579 (remarks of Congressman Kastenmeier))). *See also Calumet Nat'l Bank v. Levine,* 179 B.R. 117, 121 (N.D. Ind. 1995) (citing *Pan American* and *A.H. Robins* in support of its assertion that "a purpose behind section 157(b)(5) is making it possible for a single forum to oversee the many claims and proceedings that might arise in or affect a bankruptcy case"). What follows is a fuller quote from Congressman Kastenmeier:

The House-passed bill contained a definition of what a bankruptcy judge could properly do. The Senate bill adopted a largely similar view with one exception. Under the Senate-passed bill, bankruptcy judges could not hear unliquidated claims. The Senate approach would have repudiated decades of bankruptcy law and practice .... The change in the definition in the Senate-passed bill would have contradicted the basic purposes of the consolidated jurisdiction we adopted in 1978 [i.e., with enactment of the Code] in response to the recommendations of the Commission on Bankruptcy Laws. Finally, it would have dissipated the assets of the estate by creating a multiplicity of forums for the adjudication of parts of a bankruptcy case.

App. 4 *Collier on Bankruptcy,* at XX-18 to XX-19 (15th ed. 1995).

Placed in context, it is obvious that Congressman Kastenmeier's "multiplicity-of-forums" comment was simply directed at what he perceived would be the consequences of a Senate bill which would have precluded bankruptcy courts from liquidating claims. He did not assert that the venue-fixing power under § 157(b)(5) was designed to promote centralization.

*9 Nor would such an assertion make much sense. Individuals holding personal injury claims against an entity that files bankruptcy are faced with the prospect of (1) an ongoing stay of litigation outside the bankruptcy court, (2) non-recognition of their claims if they are not allowed, and (3) discharge of the debts allegedly owed to them even if they elect not to file proofs of claim. Stuck between the proverbial rock and a hard place, personal injury claimants have little choice but to invoke the Code's claims-allowance procedure by filing a proof of claim. Thus centralized claims litigation can easily be realized with or without § 157(b)(5). *Cf. Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 831 (5th Cir.), *cert. denied,* 125 L.Ed.2d 663 (1993) (The contention "that Section 157(b)(5) was added as a special venue provision to advance the concept of a 'single forum' ... is undercut ... by the explicit language of § 157(b)(5), which itself specifies a choice of forums in which a bankruptcy-related wrongful death action may be heard.").

In construing § 157(b)(5), consideration must be given to the Sixth Circuit's decision in *In re White Motor Credit,* 761 F.2d 270 (6th Cir. 1985). The bankruptcy district court in that case had "ordered that the [[[personal injury] claims ... be individually liquidated through adjudication in the various state and federal courts in which they [were] pending." *Id.* at 271. The issue before the Sixth Circuit was whether § 157(b)(5) precluded such claims from being liquidated in a non-bankruptcy forum. *See id.* The court ruled that it did not, reasoning that the statute applied only to those claims with respect to which the bankruptcy district court had declined to exercise its option under 28 U.S.C. § 1334(c)(1) to abstain from hearing. *Id.* at 273. [FN10]

Numerous passages in *White Motor* suggest that the Sixth Circuit was of the view that, should the bankruptcy district court decide not to abstain, it could then order that the personal injury claim pending in the non-bankruptcy court be transferred pursuant to § 157(b)(5). *See, e.g., id.* ("[T]he [[[bankruptcy] district court has the authority to leave tort cases in the courts in which they are pending for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 1995 WL 495978 (Bankr.E.D.Mich.)
**(Cite as: 1995 WL 495978 (Bankr.E.D.Mich.))**

liquidation there."); *id.* at 273-74 ("Since there are other [non-debtor] defendants in many of the tort cases against White Motor--defendants who cannot be transferred out of the jurisdiction they are now in-- the cases will have to be tried twice in different courts if the district court decides to liquidate the individual cases. This is a strong reason for leaving the cases where they are."). For a couple of reasons, however, *White Motor* is not binding with respect to the issue at hand.

The holding in *White Motor* was that the bankruptcy district court is not obligated by § 157(b)(5) to transfer personal injury claims pending in non-bankruptcy forums to the bankruptcy forum. The Sixth Circuit did not have before it the question of whether a bankruptcy district court could properly order such a transfer. Thus the suggestion in *White Motor* that it could do so is strictly *dictum.*

*\*10* Also significant is the fact that there is no analysis or discussion in *White Motor* concerning the question of whether § 157(b)(5) authorizes the transfer of claims pending outside of bankruptcy. The court simply makes the implicit and unexamined assumption that it does. [FN11] Lower courts are not bound by such assumptions. *See, e.g., Brecht v. Abrahamson,* 507 U.S. 619, 123 L.Ed.2d 353, 368 (1993) ("[S]ince we have never squarely addressed the issue, and have at most assumed the applicability of the *Chapman* standard on habeas, we are free to address the issue on the merits."); *Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103, 113 (2d Cir. 1988), *cert. denied,* 490 U.S. 1006 (1989) (A prior decision by the same court in which it "assum[ed] sub silentio the availability of punitive damages ... has no precedential value ... [A] sub silentio holding is 'not binding precedent.'" (citations omitted)); 1B *Moore's Federal Practice* ¶ 0.402[2], (2d ed. 1995) ("When an issue is not argued ..., the decision does not constitute a precedent to be followed in subsequent cases in which such an issue arises."); *Black's Law Dictionary* (5th ed. 1979) ("Under doctrine [of "stare decisis"] a *deliberate* or solemn *decision of court made after argument* ... is ... binding precedent in the same court, or in other courts of equal or lower rank in subsequent cases where the very point is again in controversy." (emphasis added)); *cf.* 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4419 (1995) ("[T]he requirements for issue preclusion demand that the issues have been both actually litigated and actually decided."). *White Motor* notwithstanding, then, courts in the sixth circuit are writing on a clean slate with respect to this issue.

Turning to the general caselaw under § 157(b)(5), those courts which expansively interpret the statute are unpersuasive because they do not even acknowledge the possibility of a competing interpretation. *See supra* n. 11. In fact, I could locate only one case in which a party contended that § 157(b)(5) is limited to bankruptcy claims. *See In re U.S. Lines,* 128 B.R. 339, 340 (S.D. N.Y. 1991) (wherein the parties opposing a motion to transfer under § 157(b)(5) "argue[d] that [that statute] merely specifies, as between the bankruptcy court and the district court, which court must handle [personal injury] claims when they are properly brought within the federal system"). And the contention was well received by the court in that case:

> Based on the context of § 157, with its definition of "core" and "non-core" proceedings and its identification of which claims are properly heard by the bankruptcy court and which are not, it is apparent that subsection (b)(5) is meant to designate which court, as between the bankruptcy court and the district court, should hear personal injury claims against the debtor, and, secondarily, to identify which court should determine the venue for such claims. Nothing in either the language of the statute or its legislative history indicates that Congress intended to extend the district court's removal power .... [T]his Court lacks jurisdiction to order the removal of the [pending state-court] Actions.

*\*11 Id.* at 341-42. *See also Kinder v. Wisconsin Barge Line,* 69 B.R. 11, 13 (E.D. Mo. 1986) ("[Section] 157(b)(5) should not be read to divest state courts of jurisdiction over personal injury claims already pending before them .... Section 157 sets forth the parameters of jurisdiction of the newly-established bankruptcy courts; subsection (b)(5) delimits the scope of jurisdiction as between those courts and Article III courts ..., without stripping state courts of traditional jurisdictional powers."); *see generally* W. Taggart, *The New Bankruptcy Court System,* 59 Am. Bankr. L.J. 231, 251 (1985) (describing § 157(b)(5) as "the equivalent of a partial limitation on the district court's authority under section 157(a) to refer proceedings to a bankruptcy judge").

*U.S. Lines* appears to be the only case in which the court was directly confronted with the assertion that § 157(b)(5) is limited to claims pending in the bankruptcy forum. For the reasons stated herein, I believe that the court was correct in accepting that interpretation of the statute. The motions filed by Dow Corning and the implant co-defendants seek the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 1995 WL 495978 (Bankr.E.D.Mich.)
(Cite as: 1995 WL 495978 (Bankr.E.D.Mich.))

Page 8

transfer of claims pending outside the bankruptcy court. Because those claims are not within the scope of § 157(b)(5), I recommend that the motions be denied.

FN1.   The quoted term includes implant lawsuits pending in state court, which were not subject to the Judicial Panel's transfer order.

FN2.   F.R.Bankr.P. 9014; 3 *Collier on Bankruptcy* ¶ 502.01[3] (15th ed. 1995) ("An objection to claim is a contested matter within the meaning of Rule 9014.").

FN3.   A deadline for doing so has not yet been set in this case.

FN4.   I use this term to refer to "the district court in which the bankruptcy case is pending." 11 U.S.C. § 157(b)(5).

FN5.   I use this as a shorthand phrase for "personal injury tort and wrongful death claims."

FN6.   If, as I believe to be the case, § 157(b)(5) is limited to claims asserted in the bankruptcy forum, then of course this omission is unremarkable: such claims are *already* pending in the bankruptcy district court. *See* 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges ... shall constitute a unit of the district court to be known as the bankruptcy court for that district.").

FN7.   Section 1407 is one of the very few such statutes, if not the only one. And even in that instance, the transferring court's authority is limited: it pertains only to actions pending in the district courts, and the actions transferred must "be remanded ... at or before the conclusion of [coordinated or consolidated] pretrial proceedings." 28 U.S.C. § 1407(a). Moreover, the entity possessing such exceptional power of transfer is no ordinary court, but rather "[t]he judicial panel on multidistrict litigation[,] ... consist[ing] of seven circuit and district judges designated ... by the Chief Justice of the United States." 28 U.S.C. § 1407(d).

FN8.   The citations to *Will* and *Holmes Fin'l*

*Assocs.* are particularly apt because, notwithstanding the concerns which compelled the Debtor and the implant co-defendants to launch their campaign to remove the implant cases from state to federal courts, the conclusion that § 157(b)(5) authorizes the transfer of claims asserted outside the bankruptcy forum would apply with equal force to all non-bankruptcy courts--state as well as federal. Indeed, those courts which expansively interpreted the statute implicitly assumed that state court proceedings may be transferred thereunder. *See infra* n. 11.

FN9.   If the extraordinary procedure allowing a judge to reach out and remove a case from another judge's docket actually existed, one would expect the statute to read something like this: "Upon motion of a party, the district court in the district where the bankruptcy case is pending may order the transfer of any personal injury and wrongful death action to itself and then try the action itself or order it tried in the district court in the district where the action arose." But the statute was not so written. Instead, it works from the correct assumption that no motion for transfer is necessary (or appropriate) because the claims are already in the bankruptcy district court.

FN10.   Section 1334(c)(1) provides:
Nothing in this section [establishing the jurisdiction of district courts over bankruptcy cases] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

FN11.   Several other courts made the same assumption. *See In re Pan Am Corp.,* 16 F.3d 513 (2d Cir. 1994); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999, 1002-03 (4th Cir.), *cert. denied,* 479 U.S. 876 (1986); *In re Waterman S.S. Corp.,* 63 B.R. 435, 14 B.C.D. 884, 15 C.B.C.2d 81 (Bankr. S.D. N.Y. 1986). As with *White Motor,* there is no indication in any of the cases cited that the court was even presented with the argument that the scope of § 157(b)(5) is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 1995 WL 495978 (Bankr.E.D.Mich.)
**(Cite as: 1995 WL 495978 (Bankr.E.D.Mich.))**

Page 9

limited to claims in bankruptcy.

Not Reported in B.R., 1995 WL 495978
(Bankr.E.D.Mich.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARLENE HOPKINS, Individually, as | ) | |
| Wrongful Death Heir, and as Successor-in- | ) | |
| Interest to NORMAN HOPKINS, JR., | ) | |
| Deceased; and MICHELLE HOPKINS, and | ) | |
| MICHAEL HOPKINS, as Legal Heirs of | ) | |
| NORMAN HOPKINS, Deceased, THE | ) | |
| FLINTKOTE COMPANY, THE OFFICIAL | ) | |
| COMMITTEE OF THE ASBESTOS | ) | |
| PERSONAL INJURY CLAIMANTS, and | ) | |
| JAMES J. MCMONAGLE as the LEGAL | ) | |
| REPRESENTATIVE FOR FUTURE | ) | |
| ASBESTOS PERSONAL INJURY | ) | |
| CLAIMANTS | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 06-298 (JJF) |
| | ) | |
| vs. | ) | |
| | ) | |
| PLANT INSULATION COMPANY; | ) | |
| UNIROYAL HOLDING, INC.; IMPERIAL | ) | |
| TOBACCO CANADA LIMITED; | ) | |
| SULLIVAN & CROMWELL LLP; and | ) | |
| DOES 1 through 100, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AFFIDAVIT OF REBECCA WORKMAN, PARALEGAL

STATE OF DELAWARE     :
                      :  SS:
NEW CASTLE COUNTY     :

    I, Rebecca Workman, certify that I am, and at all times during the service, have been an employee of Morris, James, Hitchens & Williams LLP, not less than 18 years of age and not a party to the matter concerning which service was made. I certify further that on May 15, 2006, I caused to be served:

## REPLY OF IMPERIAL TOBACCO CANADA LIMITED IN SUPPORT OF ITS
## EMERGENCY MOTION FOR IMMEDIATE ENTRY OF A PROVISIONAL ORDER

1390820/1

Service was completed upon parties on the attached list in the manner indicated thereon.

Date:    May 15, 2006.

Rebecca Workman

SWORN AND SUBSCRIBED before me this 15th day of May, 2006.

NOTARY

ELLEN J. ZICKEFOOSE
**Notary** Public - State of Delaware
**My Comm**. Expires Feb. 21, 2007

1390820/1

**VIA FEDERAL EXPRESS**

Gilbert L. Purcell, Esquire
Brayton Purcell, LLP
222 Rush Landing Road
Novato, CA 94948-6169
(Attorneys for Plaintiff Marlene
Hopkins, Michelle Hopkins, and
Michael Hopkins)

Stephen M. Snyder, Esquire
Snyder Miller & Orton LLP
111 Sutter Street, Suite 1950
San Francisco, CA 94104
(Attorneys for Plaintiffs The
Flintkote Company, The
Official Committee of Asbestos
Personal Injury Claimants, and
James J. McMonagle as the
Legal Representative for Future
Asbestos Personal Injury Claimants)

Eliot S. Jubelirer, Esquire
Jean L. Bertrand, Esquire
Morgenstein & Jubelirer
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA 94105
(Additional Counsel for Plaintiffs)

Alan Pedlar, Esquire
The Law Office of Alan Pedlar
1112 Via Malibu
Aptos, CA 95003
(Additional Counsel for Plaintiffs)

Kelly C. Wooster, Esquire
112 Rock Creek Court
P.O. Box 62
Copperopolis, CA 95228
(Additional Counsel for Plaintiffs)

**VIA FEDERAL EXPRESS**

Kevin T. Lantry
Jeffrey E. Bjork
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA 90013
Attorneys for The Flintkote Company

Gregory D. Phillips
Rohit K. Single
Brad D. Brian
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Attorneys for Sullivan & Cromwell

Monte S. Travis
Travis & Pon
2001 Fillmore Street
San Francisco, CA 94115-2708
Attorneys for Plant Insulation

Nancy E. Hudgins
565 Commercial Street, 4th Floor
San Francisco, CA 94111
Attorneys for Uniroyal Holdings, Inc.

**VIA HAND DELIVERY**

Laura Davis Jones
James E. O'Neill, III
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
919 North Market Street, 17th Floor
Post Office Box 8705
Wilmington, DE 19899-8705
Attorneys for The Flintkote Company

1390820/1

**VIA HAND DELIVERY**

Marla Eskin, Esquire
Kathleen Campbell, Esquire
Campbell & Levine, LLC
800 N. King Street, Suite 300
Wilmington, DE 19801
(Counsel for the Official Committee of
Creditors)

James L. Patton, Jr., Esquire
Edwin J. Harron, Esquire
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(Counsel to Legal Representative)

1390820/1