IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARLENE HOPKINS, Individually, as Wrongful Death Heir, and as Successor-in-Interest to NORMAN HOPKINS, JR., Deceased; and MICHELLE HOPKINS, and MICHAEL HOPKINS, as Legal Heirs of NORMAN HOPKINS, Deceased, and THE FLINTKOTE COMPANY, THE OFFICIAL COMMITTEE OF CLAIMANTS, and JAMES J. MCMONAGLE as the LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS<br>　　　　　　　　Plaintiffs,<br>　　　vs.<br><br>PLANT INSULATION COMPANY; UNIROYAL HOLDING, INC.; IMPERIAL TOBACCO CANADA LIMITED; SULLIVAN & CROMWELL LLP; and DOES 1 through 100,<br><br>　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:06-CV-00298-JJF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEBTOR'S OPPOSITION TO EMERGENCY PETITION OF
IMPERIAL TOBACCO CANADA LIMITED FOR
AN ORDER OF TRANSFER PURSUANT TO 28 U.S.C. § 157(B)(5)**

THE LAW OFFICE OF ALAN PEDLAR,
A PROFESSIONAL CORPORATION
1112 Via Malibu
Aptos, California 95003


KELLY C. WOOSTER, ESQ.
P. O. Box 62
Copperopolis, CA 95228

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)

SNYDER MILLER & ORTON LLP
Stephen M. Snyder (CA State Bar No. 054598)
James L. Miller (CA State Bar No. 071958)
111 Sutter Street, Suite 1950
San Francisco, CA 94104

MORGENSTEIN & JUBELIRER
Eliot S. Jubelirer (CA State Bar No. 061654)
Jean L. Bertrand (CA State Bar No. 083250)
One Market, Spear Street Tower, 32nd Floor
San Francisco, CA 94105

Dated: May 19, 2006

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT AND PROCEDURAL STATUS.............................................2

II   STATEMENT OF FACTS..............................................................................................................5

III. ARGUMENT ...................................................................................................................................8

    A.  Section 157(b)(5) Is Intended To Assist In The Administration Of Bankruptcy Cases, Not To Transfer Cases Against a Non-Debtor to the District Court...................................8

    B.  Imperial Tobacco Cites No Authority That Even Remotely Supports  Transfer Of The State Court Action To This Court Under Section 157(b)(5)............................................. 10

    C.  This Court Should Exercise Its Discretion In This Case And Abstain. ............................ 13

        1.  All Factors Utilized To Evaluate Discretionary Abstention Support Abstention In This Case. ............................................................................................................... 14

            a.  The State Court Action Will Have No Effect On The Efficient Administration Of The Estate. .............................................................. 16

            b.  State Law Issues Predominate; There Are No Disputed Bankruptcy Issues In The State Court Action. ...................................................... 17

            c.  The State Court Action Presents Difficult And Unsettled Issues Of State Law. ................................................................................................ 19

            d.  There Is A Related Proceeding Already Pending. ............................... 20

            e.  There Is No Jurisdictional Basis Other Than Section 1334. ............... 21

            f.  The State Court Action, Particularly The Claims Of The Hopkins Family Against Imperial Tobacco, Are Not Significantly Related To The Main Bankruptcy Case. .......................................................................... 22

            g.  The Substance Of Any Core Matter Is Determined Exclusively By State Law. ................................................................................................ 23

            h.  Severance Of The State Court Action Is Not Appropriate.................. 24

            i.  The State Court Action Would Be An Unnecessary Burden On This Court's Docket............................................................................................... 25

            j.  Imperial Tobacco Is Clearly Forum Shopping.................................... 26

            k.  The Right To Jury Trial Favors Abstention......................................... 28

            l.  The Presence Of Non-Debtor Parties.................................................. 29

    m.  This Court Should Abstain Because Imperial Tobacco's Attempted Use Of Section 157(b)(5) Is Inconsistent With The Intent Of The Statute. ...................... 29

   2.  This Court Should Not Assist Imperial Tobacco In Its Quest To Avoid Personal Jurisdiction. ................................................................................................. 29

D.  The Scope Of This Court's Subject Matter Jurisdiction Is Questionable, At Best. .......... 31

   1.  There May Not Be Sufficient "Related To" Jurisdiction Over the Hopkins Family's Claims To Entertain A Section 157(b)(5) Motion ....................................... 31

   2.  The Scope Of The Claims That May Be Transferred Under A Section 157(b)(5) Transfer Motion Is Unsettled. ................................................................................ 35

   3.  Abstention Is Mandatory Under 28 U.S.C. § 1334(c)(2). ......................................... 36

CONCLUSION ................................................................................................................... 37

## TABLE OF AUTHORITIES

**Cases**

A.H. Robins Co. v. Piccinin
    788 F.2d 994 (1986)..................................................................... 9, 11, 13

Arnold v. Garlock, Inc.
    278 F.3d 426 (5th Cir. 2001) ...................................................... 12

Asbestos Litig.
    271 B.R. 118 (S.D.W.Va 2001)................................................ 12, 31

Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.
    295 F.Supp.2d 400 (D. Del. 2002)............................................ 30

Breed Technologies v. Allied Signal Inc.
    128 F.Supp.2d 743 (D. Del. 2001)............................................ 24

Breed Technologies v. Allied Signal Inc.
    298 F.3d 263 (3rd Cir. 2002) .................................................... 24

Celotex Corp. v. Edwards
    514 U.S. 300 (1995)................................................................... 31

Chambers v. Marathon Home Loans (In re Marathon Home Loans)
    96 B.R. 296 (E.D. Cal. 1989)................................................... 20

Citibank, N.A. v. White Motor Corp. (In re White Motor Credit)
    761 F.2d 270 (6th Cir. 1985) .................................................. passim

Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.
    130 B.R. 405 (S.D.N.Y. 1991)............................................. 17, 22, 28

Enron Corp. v. Arora
    317 B.R. 629 (Bankr. S.D.N.Y. 2004)...................................... 28

Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)
    179 B.R. 913 (Bankr. E.D. Cal. 1995)...................................... 18

Gorse v. Long Neck, Ltd.
    107 B.R. 479 (D. Del. 1989)...................................................... 15

Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.
    545 U.S. 308, 125 S.Ct. 2363, 2367 (2005)............................. 26

Great Am. Ins. Co. v. Mobile Tool Int'l (In re Mobile Tool Int'l)
    320 B.R. 552 (Bankr. D. Del. 2005) ......................................... 15

Hohl v. Bastian
    279 B.R. 165 (W.D. Pa. 2002) ........................................................................ 28

In re Astropower Liquidating Trust
    335 B.R. 309 (Bankr. D. Del. 2005) ................................................. 15, 23, 26

In re Combustion Engineering, Inc.
    391 F.3d 190 (3rd. Cir. 2005) .............................................. 12, 32, 33, 34

In re Continental Airlines, Inc.
    133 B.R. 585 (Bankr. D. Del. 1991) ............................................................. 28

In re Dow Corning Corp.
    86 F.3d 482 (6th Cir. 1996) ............................................................... passim

In re Federal-Mogul Global, Inc.
    537 U.S. 1148 (2003) ...................................................................................... 11

In re Federal-Mogul Global, Inc.
    282 B.R. 314 (Bankr. D. Del.) ........................................................... passim

In re Federal-Mogul Global, Inc.
    300 F.3d 368 (3rd Cir. 2002) ..................................................... 11, 14, 32

In re Harnischfeger Indus., Inc.
    246 B.R. 421 (Bankr. N.D. Ala 2000) .................................................. 12, 28

In re Pan American Corp.
    950 F.2d 839 (2nd Cir. 1991) ..................................................... 11, 12, 13

Lindsey v. Dow Chemical Co. (In re Dow Corning)
    113 F.3d 565 (6th Cir. 1997) ......................................................... 13

Luevano v. Dow Corning Corp.
    183 B.R. 751  (W.D. Texas 1995) ......................................... 10, 12, 21, 34

Mattingly v. Newport Offshore, Ltd.
    57 B.R. 797 (D.R.I. 1986) ............................................................................. 17

McCarthy v. Prince (In re McCarthy)
    230 B.R. 414 (9th Cir. BAP 1999) ........................................................... 18

Midlantic Nat'l Bank/Citizens v. Comtek Electronics, Inc. (in re Comtek Electronics, Inc.)
    23 B.R. 449 (Bankr. S.D.N.Y. 1982) ....................................................... 22

Nat'l City Bank v. Coopers & Lybrand
    1985 WL 6424 (D. Minn. 1985) ............................................................. 24

Nat'l Mut. Ins. Co. v. Tidewater Transfer Co.
    337 U.S. 582 (1949)........................................................................................... 24

Nat'l City Bank v. Coopers & Lybrand
    802 F.2d 990 (8th Cir. 1986) ........................................................................... 24

Pacor, Inc. v. Higgins (In re Pacor)
    743 F.2d 984 (3rd Cir. 1984) .................................................................... passim

Piper Aircraft Co. v. Reyno
    454 U.S. 235, 102 S.Ct. 252 (1982).................................................................. 28

Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic
    Reader's Service, Inc.)
    81 B.R. 422 (Bankr. S.D. Tex. 1987) .............................................................. 26

Retirement Systems of Alabama v. Merrill Lynch & Co.
    209 F.Supp.2d 1257 (M.D. Ala. 2002) ............................................................ 35

Roy v. Superior Court
    127 Cal.App.4th 337, 25 CR 3d 488 (2005) .................................................... 30

Satellite Financial Planning Corp. v. First Nat. Bank of Wilmington
    633 F. Supp. 386 (D. Del. 1986)...................................................................... 20

Scherer v. Carroll
    150 B.R. 549 (D. Vermont 1993) .............................................................. 17, 19

Shamrock Oil & Gas Corp. v. Sheets
    313 U.S. 100 (1941)......................................................................................... 34

Shubert v. Roche Holding AG
    157 F.Supp.2d 542 (E.D. Pa 2001) ...................................................... 17, 18, 28

United Mine Workers v. Gibbs
    383 U.S. 715 (1966)......................................................................................... 18

Van Dusen v. Barrack
    376 U.S. 612, 639 (1964)................................................................................. 20

Washington Mutual Bank v. Superior Court
    24 Cal. 4th 906 (2001)..................................................................................... 20

Williams v. Shell Oil Co.
    169 B.R. 684 (S.D. Cal. 1994)................................................................... 18, 21

Wise v. Travelers Indem. Co.
    192 F.Supp.2d 506 (N.D.W. Va. 2002) ........................................................... 12

**Statutes**

11 U.S.C. section 1123(b)(3)(B) ..................................................................... 22

11 U.S.C. section 323 ........................................................................... 18, 23

11 U.S.C. section 327(e) ............................................................................ 16

11 U.S.C. section 524(g) .................................................................. 23, 32, 34

11 U.S.C. section 544 ......................................................................... 23, 24

11 U.S.C. section 544(b) ........................................................... 18, 19, 23, 24

11 U.S.C. section 544(b)(1) ...................................................................... 18

28 U.S.C. section 1331 ............................................................................. 24

28 U.S.C. section 1334 ...................................................................... passim

28 U.S.C. section 1334(b) ......................................................................... 36

28 U.S.C. section 1334(c)(1) ..................................................................... 15

28 U.S.C. section 1334(c)(2) ..................................................................... 36

28 U.S.C. section 1404(a) ......................................................................... 23

28 U.S.C. section 1412 ............................................................................. 28

28 U.S.C. section 1441 ............................................................................. 35

28 U.S.C. section 1452 ....................................................................... 22, 35

28 U.S.C. section 1452(b) ......................................................................... 18

28 U.S.C. section 157 ............................................................................... 13

28 U.S.C. section 157(b)(2) .................................................................. 12, 36

28 U.S.C. section 157(b)(2)(B) ................................................................... 9

28 U.S.C. section 157(b)(4) ....................................................................... 36

28 U.S.C. section 157(b)(5) ................................................................. passim

Calif. Code Civ. Proc. section 418.10 .......................................................... 30

**Other Authorities**

1 Collier on Bankruptcy
¶ 3.07[1]  (15th ed. rev. 2006) ................................................................ 35

"Bankruptcy jurisdiction . . . was not conferred for the

convenience of those not in bankruptcy . . . ."

Pacor, Inc. v. Higgins (In re Pacor), 743 F.2d 984, 996 (3rd Cir. 1984).

The Flintkote Company ("Flintkote" or "Debtor") responds to the "Emergency Petition of Imperial Tobacco Canada Limited for an Order of Transfer Pursuant to 28 U.S.C. § 157(b)(5)" (the "Transfer Motion"), and the "Brief Of Imperial Tobacco Canada Limited In Support Of Emergency Petition For An Order Of Transfer Pursuant To 28 U.S.C. § 157(b)(5)" ("Transfer Brief").

This case belongs in California. The lawsuit presents pure state law claims by Flintkote, headquartered in California, and by the Hopkins plaintiffs, residents of California, arising from acts that occurred almost entirely in California. Flintkote sues to recover $525,000,000 plus interest in respect of dividends declared by it and paid by it to Imperial Tobacco from California, based on domination exerted over it by Imperial Tobacco in California, and on erroneous and conflicted legal advice received by Flintkote from Imperial Tobacco's counsel in California. The Hopkins plaintiffs sue Imperial Tobacco for a wrongful death in California arising from asbestos exposure in California, and join as defendant Plant Insulation Company, a California corporation located in California. Flintkote and the Hopkins plaintiffs seek to hold Imperial Tobacco responsible as Flintkote's alter ego by reason of its domination and control for years over Flintkote in California.

The Transfer Brief claims that California, where Flintkote filed this case, has "absolutely no connection to the Bankruptcy Case." (Transfer Brief, p. 16.) That is quite misleading. At issue here is whether the lawsuit against Imperial Tobacco should remain in California where Flintkote filed it. The lawsuit's relationship to California is critical; whether the bankruptcy case has a connection to California doesn't matter.

The Transfer Motion advocates a tortured use of a statute enacted for the benefit of a debtor against the debtor's interests. The purpose of 28 U.S.C. § 157(b)(5) is to permit the debtor to seek transfer of personal injury claims against it to the district court where its bankruptcy case is pending. Imperial Tobacco is not the debtor – it is the defendant sued by the debtor. It is not entitled to the benefit of the statute. To try to bring the statute into play, Imperial Tobacco asserts

that the first three causes of action against Imperial Tobacco "are in fact personal injury tort claims against Flintkote." (Transfer Brief, p. 4.) That is just wrong; Flintkote is a plaintiff, not a defendant, and it is aligned with the personal injury co-plaintiffs against Imperial Tobacco. A judgment in favor of the Hopkins asbestos co-plaintiffs will run against Imperial Tobacco only, not Flintkote. Flintkote joined with the Hopkins plaintiffs to establish Imperial Tobacco's responsibilities for asbestos claims against Flintkote. But that does make the claims of the Hopkins "in fact" claims against Flintkote.

The case was filed in California because Flintkote and the legal representatives of the asbestos injury claimants in its bankruptcy – present and future – believed California was the best place to bring the case, viewed from the perspective of what is best for the bankruptcy estate and its creditors. While the case seeks very substantial damages, its only effect on the bankruptcy estate will be (hopefully) to generate a substantial recovery to benefit Flintkote's creditors. Given the California locus of the case, the major litigation effort to reduce the claims to judgment should take place in California. Such was and is the judgment of Flintkote and every creditor constituency in its bankruptcy case. There is simply no good reason to force the case to be litigated in Delaware at the urging of a Canadian defendant that makes plain it intends to contest personal jurisdiction in this court in any event.

## I.

## PRELIMINARY STATEMENT AND PROCEDURAL STATUS

Flintkote, the Official Asbestos Claimants' Committee (the "ACC") appointed in Flintkote's chapter 11 case (the "Chapter 11 Case"), and the Future Claims Representative appointed by the Bankruptcy Court in the Chapter 11 Case (the "FCR" and collectively, with Flintkote and the ACC, the "Flintkote Plaintiffs" or the "Estate Representatives") brought a case in the California Superior Court (the "State Court Action"), against Imperial Tobacco. The suit seeks to redress the damages caused by Imperial Tobacco (Flintkote's former ultimate parent) for stripping $525,000,000 from Flintkote, leaving its remaining assets woefully inadequate to pay

2

billions of dollars of liabilities Flintkote owes to asbestos claimants. As part of the State Court Action, Flintkote and three individuals, the heirs of Norman Hopkins, Jr., who died of mesothelioma (the "Hopkins Family"), are trying to establish Imperial Tobacco's alter ego liability for Flintkote's obligations,[1] based not only on its asset stripping, but also on years of its dominance and control over Flintkote afterwards.

On April 17, 2006, the Bankruptcy Court heard several matters related to the State Court Action, including formal approval of the retention of San Francisco Bay Area counsel for Flintkote in the State Court Action,[2] and approval of a joint prosecution agreement by which the state court case would be jointly prosecuted for Flintkote's benefit by Flintkote and the legal representatives of current and future asbestos claimants.[3] Upon the latter approval, the complaint in the State Court Action was amended to add the ACC and FCR as plaintiffs, as contemplated by the motions and bankruptcy court orders.

Imperial Tobacco does not like the California court in which Flintkote and the Hopkins family sued it. On May 5, 2006, Imperial Tobacco removed the State Court Action to the United

---

[1]   Pursuant to the "Agreement Providing For Joint Pursuit of Alter Ego Remedies" (the "Alter Ego Agreement") approved by the Bankruptcy Court on May 15, 2006, a copy of which is attached as Exhibit "8" to the "Declaration of Alan Pedlar In Support Of Debtor's Opposition To Emergency Petition Of Imperial Tobacco Canada Limited For An Order Of Transfer Pursuant To 28 U.S.C. § 157(B)(5)" (the "Pedlar Declaration"), the automatic stay of Bankruptcy Code section 362 was modified to allow the Hopkins Family to pursue whatever alter ego remedies they would have been able to pursue against Imperial Tobacco absent the filing of the Chapter 11 Case. The Alter Ego Agreement does not, as contended by Imperial Tobacco (see Transfer Brief at 2, 5), provide for a transfer of any interest, "undivided" or otherwise, in alter ego remedies that were held by Flintkote prior to the filing of the Chapter 11 Case. Copies of the Bankruptcy Court's Order and the First Amendment to the Alter Ego Agreement are attached to the Pedlar Declaration as Exhibits 8 and 9, respectively.

[2]   See Pedlar Declaration, Exhibit "1," at p.1 and p.4 ¶7. The Court granted the application, entering its order employing special counsel to prosecute the State Court Action. Id. at Exhibit "2."

[3]   See Pedlar Declaration at Exhibit "3." This Motion entailed a request to approve an "Agreement Providing for Joint Prosecution of the Dividend Recovery Litigation" (the "Joint Prosecution Agreement"), a copy of which is attached as Exhibit "A" to Exhibit "4" of the Pedlar Declaration, and the original form of the Alter Ego Agreement, a copy of which is attached as Exhibit "5" to the Pedlar Declaration.

States District Court for the Northern District of California. It filed as well in that Court a motion to stay and to transfer to this Court. And it concurrently filed the Transfer Motion now before this Court. The Flintkote Plaintiffs and the Hopkins family filed a motion to remand the case from the Northern District of California to the state court. The motions in the Northern District of California are set for hearing on June 19, 2006.

While it may be understandable why Imperial Tobacco is engaged in a concentrated effort to avoid suit in the forum best calculated by Flintkote and its creditors to benefit the Flintkote estate, it should not be permitted to use Flintkote's Chapter 11 Case to its own advantage. Imperial Tobacco is a stranger to the Flintkote Chapter 11 Case and that case does not exist to benefit it.

Imperial Tobacco's attempt to use 28 U.S.C. § 157(b)(5) is *highly* questionable. It was never intended to be a lever to pry litigation commenced by a debtor in state court away from the chosen forum, especially over the objection of the Debtor and the creditor constituencies in a bankruptcy. There is not a single reported case granting a section 157(b)(5) transfer under the circumstances of this case.

Imperial Tobacco makes the astonishing claim that "[n]o party to the Pending Action will be prejudiced by transferring the Pending Action to this Court." (Transfer Brief at 4). However, transfer of the State Court Action to this Court will (a) deny the Flintkote Plaintiffs and the Hopkins Family their chosen forum, (b) allow a stranger to the Chapter 11 Case to structure litigation to its liking using a statutory provision intended to benefit the debtor; (c) impose a financial hardship on the Hopkins Family to litigate a California wrongful death case in a distant forum, (d) subject the plaintiffs to challenges to personal jurisdiction that do not exist in California,[4] (e) burden this Court with a uniquely state court action, (f) sanction forum shopping

---

[4] Imperial Tobacco filed an answer in the State Court Action and did not challenge jurisdiction over it by motion, as required by California procedure (which differs from federal practice). Personal jurisdiction is locked up in California. See Section III.C.2., *infra*. Thus, it is especially

by the defendant, including an attempt to obtain more favorable substantive law, (g) place this case in a forum with questionable subject matter jurisdiction, and (h) potentially subject the plaintiffs to the cost of two trials and the risk of inconsistent verdicts.

Discretionary abstention is in order. Every single factor considered for discretionary abstention points to that result. Rather than find extremely questionable subject matter jurisdiction (an issue that is always subject to re-examination on appeal), or determine unsettled issues as to what parts of the State Court Action can be transferred or whether mandatory abstention is required (which also raises subject matter jurisdiction issues), this Court should exercise its discretion and abstain.

## II.

## STATEMENT OF FACTS

The complaint initiating the State Court Action (the "Complaint")[5] states 16 causes of action, each and every one of which is based entirely on state law theories of recovery. By the First through Seventh Causes of Action, the Hopkins Family, each member of which is a California resident, asserts asbestos wrongful death claims against, amongst others, Plant Insulation Company ("Plant"), a corporation located in San Francisco, Uniroyal Holding, Inc. ("Uniroyal"), and Imperial Tobacco, a Canadian corporation alleged to be responsible as the alter ego of Flintkote, which is and was at the time of the events and actions giving rise to alter ego liability, a corporation headquartered in San Francisco.

The Hopkins Family sued Plant, Uniroyal, and Imperial Tobacco (as the alter ego of Flintkote) on state law negligence and products liability causes of action and for the wrongful death of Norman Hopkins, Jr., who died September 27, 2005, from mesothelioma allegedly as a

---

perverse that Imperial Tobacco seeks to use Flintkote's Chapter 11 case to move the State Court Action to this Court, where it says it will contest personal jurisdiction.

[5] A copy of the First Amendment Complaint is attached as Exhibit B-8 to the Transfer Brief.

result of exposure to asbestos-containing products of Plant, Uniroyal[6] and Flintkote, of which Imperial Tobacco is alleged to be the alter ego.[7]

The Complaint sets forth in detail facts supporting the claims against Imperial Tobacco. They are briefly summarized here. Flintkote, which was one of many direct and indirect subsidiaries of Genstar Corporation, manufactured and sold products containing asbestos for many years. See Complaint at ¶ 11. Among the other companies owned by Genstar was Canada Trustco Mortgage Company ("Canada Trustco"), and therein lies the rub. Imperial Tobacco wanted Canada Trustco's financial business, and would not take "No" for an answer. Id. at ¶ 17. Imperial Tobacco launched a hostile takeover of Genstar with the stated intention of selling off all the businesses owned directly or indirectly by Genstar, including Flintkote, except for Canada Trustco, and to use the sales proceeds to pay off part of the acquisition costs. Id. at ¶¶ 17, 18.

Imperial Tobacco did acquire Genstar in August 1986, and immediately commenced its domination and control over Flintkote. First, it caused Flintkote to isolate its asbestos liabilities from its valuable operating businesses by transferring those operating assets to four newly created subsidiary corporations. Next, it caused Flintkote to sell the stock of its subsidiaries for $663,500,000 (U.S.) and $100,000,000 (Canadian). Finally, completing the scheme to use Genstar's assets to acquire Canada Trustco, it caused Flintkote to dividend $525,200,000 up the corporation chain for the benefit of Imperial Tobacco. Id. at ¶¶ 19-20. This orchestrated scheme

---

[6]    The claims against Plant and Uniroyal are for wrongful death and personal injury (survivorship), while the claim against Imperial Tobacco is for wrongful death only because Flintkote's liability for personal injury was resolved by judgment in the personal injury action filed by plaintiffs' decedent in the same Superior Court in a predecessor action. See "Declaration of Alan R. Brayton In Support Of Debtor's Opposition To Emergency Petition Of Imperial Tobacco Canada Limited For An Order Of Transfer Pursuant To 28 U.S.C. § 157(B)(5) (the "Brayton Declaration") at ¶¶ 5-6, 11.

[7]    See Brayton Declaration at ¶¶ 5 and 7; Complaint, First Cause of Action at ¶¶ 1-45 and 46-67; Second Cause of Action at ¶¶ 68-78. The Third Cause of Action is against the Defendants under state law for loss of consortium. See id. at ¶¶ 78-83. The Fourth, Fifth and Sixth Causes of Action are only against Plant and Uniroyal, and set forth state law claims based on theories of negligence, products liability, and false representation, respectively. See id. at ¶¶ 84-93. The Seventh Cause of Action is just against Plant, again under state law, for Contractor Liability. Id. at ¶¶ 94-113.

imposed upon Flintkote by Imperial Tobacco left Flintkote as little more than an asbestos claims resolution facility with inadequate resources[8] to respond to the crushing burden of its asbestos liabilities. Id. at ¶¶ 41-42. Ultimately, on May 1, 2004, after Flintkote had finally got out from under the thumb of Imperial Tobacco, it filed a voluntary petition under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Delaware. Id. at ¶¶ 2, 45.

The Complaint brings several state law causes of action by Flintkote against Imperial Tobacco and Sullivan & Cromwell ("S&C") arising out of these facts. Thus, the Ninth Cause of Action asserts Flintkote's state law rights to recover improper dividends (Id. at ¶¶ 119-123); the Tenth Cause of Action asserts the rights of a creditor under state law to recover the improper dividends under state common law (Id. at ¶¶ 124-129); and the Eleventh Cause of Action asserts the rights of a creditor under state law to recover the dividends as fraudulent transfers. Id. at ¶¶130-135. The Twelfth, Fourteenth, and Fifteenth Causes of Action seek state law remedies based on breach of fiduciary duties and theories of constructive trust and restitution. Id. at ¶¶136-139 and ¶¶ 148-153. The Thirteenth Cause of Action is a state law cause of action against S&C for breach of duty and negligence for its conflicting role as counsel to *both* the controlling grandparent, Imperial Tobacco, and the controlled subsidiary, Flintkote, with respect to the dividend transactions, including the propriety of legal advice given during that process. Id. at ¶¶ 140-147.[9] The Sixteenth Cause of Action is a state law claim for declaratory relief based on a contractual undertaking by Imperial Tobacco in favor of Flintkote in respect to the dividend transactions. Id. at ¶¶ 154-159.

---

[8] Imperial Tobacco insisted that Flintkote continue to exist, although it had none of its historic business lines, for the sole purpose of running out asbestos liabilities for as long as possible. The game plan was simple: Have Flintkote try to collect insurance and pay asbestos claims for as long as it could, putting distance between the dividend and the ultimate day of reckoning.

[9] The participation in the dividend transaction by S&C, Imperial's long-time counsel, as counsel to Flintkote and to Imperial Tobacco is one of many, many examples of Imperial Tobacco's improper dominance and control over Flintkote.

Flintkote and the Hopkins Family also brought state law claims against Imperial Tobacco to establish its alter ego responsibility based in large part on the same set of facts and circumstances that give rise to Flintkote's claims described above. Accordingly, Flintkote, by the Eighth Cause of Action, has joined the Hopkins Family's alter ego efforts by seeking declaratory relief that Imperial Tobacco is responsible as the alter ego of Flintkote.

Thus, notwithstanding that (a) every cause of action alleged in the Complaint is based on state law, (b) the Bankruptcy Court was fully aware that the State Court Action had been filed in the San Francisco Superior Court when it (i) employed San Francisco Bay Area counsel to prosecute the matter, (ii) authorized the ACC and the FCR to appear in the State Court Action, and (iii) indicated to Imperial Tobacco that it could raise its arguments in the action pending in the state court, and (c) the plaintiffs in the State Court Action consist of a group of California citizens and a corporation based in San Francisco, who are collectively suing two corporations headquartered in California, a law firm with an office in California, and a Canadian company alleged to be responsible as the alter ego of a corporation headquartered in California, on facts and circumstances that largely took place in California, Imperial Tobacco requests that this Court—over the objection of the Estate Representatives—transfer the State Court Action to Delaware to be heard before this Court.[10] For the reasons set forth below, the Transfer Motion should be denied and the State Court Action should be promptly remanded.

## III.

## ARGUMENT

### A. Section 157(b)(5) Is Intended To Assist In The Administration Of Bankruptcy Cases, Not To Transfer Cases Against a Non-Debtor to the District Court.

Judicial Code section 157(b)(5) provides:

---

[10] This case, if transferred, will be heard by this Court because of the personal injury nature of the Hopkins Family's claims and the requests for jury trial.

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

This section fills in the jurisdictional gap created by the limited jurisdiction of the bankruptcy court to hear personal injury and wrongful death cases against the debtor. See 28 U.S.C. § 157(b)(2)(B) (excluding personal injury causes of action from core proceedings). Thus, section 157(b)(5) is intended to assist and benefit a bankruptcy estate by providing a forum to estimate or try personal injury claims against the debtor as needed for administration of the estate.

In the mass tort context, section 157(b)(5) also allows personal injury suits against the debtor to be "centralized before a single forum where all interests can be heard and in which the interests of all claimants with one another may be harmonized," A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1014 (1986), thereby allowing for "a single focal point" of personal injury claims enabling a debtor to develop a plan of reorganization. Id at 1011 (1986). "Section 157(b)(5) was drafted to cover the procedure in connection with a special group of cases, to wit, personal injury tort claims *against a debtor*." Id. (emphasis added).

The State Court Action does not involve a personal injury claim against the debtor. Rather, the Hopkins Family *joined with the Debtor* to pursue alter ego remedies against Imperial Tobacco, and, while the underlying claim in the Hopkins Family's action is a wrongful death case, the Hopkins Family have not sued Flintkote. Thus, insofar as the wrongful death claim is concerned, it is a suit among *nondebtors*—the Hopkins Family and Imperial Tobacco. Moreover, even though Flintkote's plan of reorganization will deal with numerous asbestos claims, the State Court Action *deals with only one such claim* and does not affect the plan process. See Section III.C.2.a, *infra*. Moreover, in the State Court Action, there is no need for "all interests [to] be heard" or to harmonize "the interests of all claimants with one another." A.H. Robins, 788 F.2d at 1014. *Claimants have already been heard from and their interests have already been harmonized*: The Debtor, the ACC, as the representative of all present claimants, and the FCR, as

the representative of all future claimants, are in harmony; they have all joined with the Hopkins Family and sued Imperial Tobacco in the California Superior Court. No creditor objected to the motions for Bankruptcy Court orders to make that happen.

As noted by the Sixth Circuit in In re Dow Corning Corp., 86 F.3d 482, 487 (6th Cir. 1996), under section 157(b)(5), a court needs to balance four interests: (1) the interest of the personal injury claimants; (2) the debtor's interest in formulating a plan; (3) the interests of the debtor's shareholder, if sued with the debtor; and (4) the judicial system's interest in allocating its limited resources effectively and efficiently. None of these interests applies to Imperial Tobacco, the former indirect sole shareholder of the Debtor that stripped the Debtor of $525,000,000 so it could buy a Canadian bank. Imperial Tobacco fails to provide any policy reason or explanation, other than its single-minded multi-jurisdictional attempts to get out of California, why a statute enacted for the benefit of the debtor should be used against the debtor. There are none.

**B.      Imperial Tobacco Cites No Authority That Even Remotely Supports Transfer Of The State Court Action To This Court Under Section 157(b)(5).**

Imperial Tobacco relies upon authorities regarding 157(b)(5) transfer motions arising in the chapter 11 cases of only four debtors: A.H. Robins Company, Incorporated; Dow Corning Corporation; Pan American Corporation; and Federal-Mogul Global, Inc. Nothing in any of these cases supports Imperial Tobacco's contention that a *nondebtor* defendant being sued by *nondebtor* plaintiff on a personal injury claim where the debtor has not been named as a defendant, can use section 157(b)(5), over the objection of the debtor, to forum shop a case out of a court that is acceptable not only to the nondebtor plaintiff, the Debtor and the other Estate Representatives, but in fact, specifically selected by them. Simply put, a "***non-bankrupt defendants [cannot] invoke federal removal jurisdiction so as to obtain a transfer of state claims to a federal distant forum.***" Luevano v. Dow Corning Corp., 183 B.R. 751, 752 (W.D. Texas 1995) (removal by non-debtor co-defendant; case remanded) (emphasis added).

10

In A.H. Robins, 788 F.2d 994, the debtor was "[c]onfronted, if not overwhelmed, with an avalanche" of personal injury claims (Dalkon shield injury claims). Id. at 996. When A. H. Robins invoked section 157(b)(5), it did so as *the debtor and named defendant* in every one of the 5,000 pending personal injury cases. Id. at 996. Similarly, Dow Corning, 86 F.3d 482, involved a request *by Dow Corning* to transfer silicone breast implant personal injury cases under section 157(b)(5) where it and its shareholders had been named, and a similar request by nondebtor defendants, but only in cases where Dow Corning had also been named as a codefendant. Id. at 487 n.7.[11]    Finally, in In re Pan American Corp., 950 F.2d 839 (2nd Cir. 1991), the court confronted claims arising from the explosion of Pan Am Flight 103 over Lockerbie, Scotland, and *it was the debtor*, Pan American, that requested section 157(b)(5) transfers. Given that *the debtor* was named as defendant in every case transferred and requested transfer, the case bears no resemblance to this case. Nobody is suggesting that all of the cases pending against Flintkote when it filed its bankruptcy case, nor any subset of those case, be transferred to Delaware – and this court well knows that is not how the Delaware asbestos bankruptcies are being handled.

Pacor, Inc. v. Higgins (In re Pacor), 743 F.2d 984 (3rd Cir. 1984), and In re Federal-Mogul Global, Inc., 282 B.R. 314 (Bankr. D. Del.), mandamus denied, 300 F.3d 368 (3rd Cir. 2002), cert. denied, 537 U.S. 1148 (2003), are the only Third Circuit cases Imperial Tobacco relies upon. They are both cases where a nondebtor party attempted to use a debtor's chapter 11 case to change the forum of a pending action in which the debtor had not been named. In both cases, *the courts denied the requested transfer*. Thus, Imperial Tobacco does not cite a single authority—not one—where a nondebtor successfully used a debtor's bankruptcy case to transfer a personal injury action where the tort claimant had not named the debtor as a party, let alone an action where the debtor and the tort claimant affirmatively believe that the original jurisdiction

---

[11] In Dow Corning, the court indicated that transfer under section 157(b)(5) could be available to non-debtor parties, but never actually granted such a request where the debtor was not the moving party and was not a codefendant. Such cases involving non-debtors were remanded by Sixth Circuit to the district court for abstention consideration.

11

was appropriate, oppose transfer, and the representatives of both present and future claimants support these determinations. As succinctly stated by the Third Circuit, "[b]ankruptcy jurisdiction . . . was not conferred for the convenience of those not in bankruptcy . . . ." Pacor, 743 F.2d at 996 (3rd Cir. 1984); see also, In re Combustion Engineering, Inc., 391 F.3d 190, 227 (3rd. Cir. 2005) (no "related to" jurisdiction with respect to tort claims against nondebtor party; claims would not affect "the bankruptcy without the intervention of yet another lawsuit"..

Imperial Tobacco cites Pan American, 950 F.2d at 845, for the proposition that "transfer should be the rule, abstention the exception." (Transfer Brief at 15). That certainly is the rule, as in Pan American, *where the debtor makes the transfer request*. However, the law is decidedly to the contrary when a nondebtor requests transfer under section 157(b)(5).

The overwhelming majority of courts remand cases removed by nondebtors, or abstain if a nondebtor attempts a transfer under section 157(b)(2). See, e.g., Pacor, 743 F.2d 984; Federal-Mogul, 282 B.R. 314; Arnold v. Garlock, Inc., 278 F.3d 426, (5th Cir. 2001) (nondebtor versus nondebtor action; attempted transfer under section 157(b)(5) denied); Asbestos Litig., 271 B.R. 118, 124 (S.D.W.Va 2001) (nondebtor versus nondebtor action; remanded after removal); In re Harnischfeger Indus., Inc., 246 B.R. 421, 439 (Bankr. N.D. Ala 2000) (nondebtor versus nondebtor action; remanded due to debtor's refusal to join in the motion); Luevano, 183 B.R. 751, (W.D. Texas 1995) (removal by nondebtor co-defendant; case remanded); Wise v. Travelers Indem. Co., 192 F.Supp.2d 506 (N.D.W. Va. 2002) (nondebtor action by asbestos plaintiffs against debtor's insurers removed by insurers but remanded for lack of "related to" jurisdiction). In keeping with the fact that section 157(b)(5) was enacted for the benefit of the debtor, *no 157(b)(5) transfer motion has ever been approved over the objection of the debtor*.

This is not a situation where hundreds of thousands of asbestos cases are pending against Imperial Tobacco across the country. But suppose it were. Imperial Tobacco could follow the same strategy in each of those cases that it follows here – remove and file an emergency petition to transfer to this Court. Flintkote expects the Court knows that numerous asbestos bankruptcies

12

are in the Delaware bankruptcy court, and that co-defendants – non-debtors – in those bankruptcies have not pulled all the cases against themselves to this Court. That was tried in Federal-Mogul and failed miserably.

**C.      This Court Should Exercise Its Discretion In This Case And Abstain.**

Imperial Tobacco contends that this Court has but two choices under section 157(b)(5): either try the case or send it to the federal court in the district in which the claim arose. (Transfer Brief at 9) This is simply not true. This Court has a very important third alternative: This Court may exercise its discretion and abstain in the context of a request to transfer under section 157(b)(5).

> [S]ection 157(b)(5) has been consistently construed to recognize discretion in district courts to leave personal injury cases where they are pending.

Pan American, 950 F.2d at 844 (abstention is permitted with regard to section 157(b)(5) transfer requests); Citibank, N.A. v. White Motor Corp. (In re White Motor Credit), 761 F.2d 270, 273 (6th Cir. 1985); A.H. Robins, 788 F.2d at 1010; Federal-Mogul, 282 B.R. at 314; Lindsey v. Dow Chemical Co. (In re Dow Corning), 113 F.3d 565, 568 (6th Cir. 1997); Pan American, 950 F.2d at 844 ("A motion under section 157(b)(5) . . . requires an abstention analysis"); Dow Corning, 86 F.3d at 497 (same). Indeed, the *first* step in the analysis of any transfer motion under section 157(b)(5)—a step that Imperial Tobacco virtually ignores—is an analysis of abstention.

> [T]he Bankruptcy Code "allows abstention for personal injury cases" and only "where abstention does not occur will the requirement for adjudication in the district court take effect."

Pan American, 950 F.2d at 844, quoting White Motor Credit, 761 F.2d at 273. Thus, if abstention is appropriate, the court need not even address the other issues presented under section 157. See Section D, *infra*.

> [I]n liquidating tort cases in bankruptcy, the district court would *first* decide whether it should leave the cases with respect to which claims have been filed in the bankruptcy court in the courts in which they are pending and then, if it decides against this course, the district court must

13

> try the cases itself or send them to the federal court for the district in
> which they arose.

White Motor Credit, 761 F.2d at 273 (emphasis added). Thus, in considering a motion under

section 157(b)(5), the court examines abstention first, and only if it decides not to abstain, does it

move on to consideration under section 157(b)(5). Here, Imperial Tobacco's Transfer Motion

and Brief fail to even discuss this threshold issue.

The basis for discretionary abstention is so clear here that there is no reason for the Court

to reach the issues presented under section 157(b)(5). For example, this Court used the threshold

issue of discretionary abstention to decide Federal-Mogul. Rather than deciding such issues as

subject matter jurisdiction and mandatory abstention, the Court in Federal-Mogul found the

circumstance of a group of nondebtor defendants attempting to manipulate the jurisdiction of the

debtor's bankruptcy to their own advantage intolerable.

> [T]he facts of this case leave no reasonable conclusion other than that the
> Court should exercise discretion to abstain and to remand. Fairness,
> comity, and preserving the integrity of this Court's management of the
> bankruptcy compel this result.

282 B.R. at 314.

Moreover, in Federal-Mogul, at least the debtor was a defendant in many of the

thousands of cases. In re Federal-Mogul Global, Inc., 300 F.3d 368, 372-73 (3d Cir. 2002).

Here, not only is the debtor not a defendant in the State Court Action, it is a plaintiff in the

Action, which, along with the Hopkins Family, the ACC and the FCR, selected the forum with

the most contacts with the case as appropriate to maximize its potential. Imperial Tobacco, which

is not even a creditor in the Flintkote case, has no business attempting to pervert section 157(b)(5)

by substituting its judgment for the judgment of the Flintkote Plaintiffs as to the proper means to

conduct litigation against it.

### 1.    All Factors Utilized To Evaluate Discretionary Abstention Support Abstention In This Case.

Judicial Code section 1334(c)(1) authorizes permissive abstention. It provides:

14

> Nothing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Courts in this district weigh twelve factors to evaluate the facts of a case under the criteria of section 1334(c)(1):

> (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.

In re Astropower Liquidating Trust, 335 B.R. 309, 330 (Bankr. D. Del. 2005), quoting Great Am. Ins. Co. v. Mobile Tool Int'l (In re Mobile Tool Int'l), 320 B.R. 552, 556-57 (Bankr. D. Del. 2005).[12]

There is a reason the Transfer Motion does not contain this threshold analysis: Typically, the court must assess the relative importance of each factor as it falls on one side of the ledger or the other, but here every factor identified supports abstention. Moreover, this case involves additional factors usually not seen when addressing the twelve factors identified above, including (a) the attempt by Imperial Tobacco to use section 157(b)(5) for an improper purpose, (b) the apparent strategy of Imperial Tobacco to escape from a jurisdiction that has personal jurisdiction over it to a jurisdiction where it can contest personal jurisdiction, (c) the questionable subject

---

[12]    Cases dealing with remand motions are relevant to abstention under section 1334(c)(1). Federal-Mogul, 282 B.R. at 314 ("The courts have developed a list of factors to be considered when deciding to abstain under section 1334(c)(1) and these are identical to those relevant to equitable remand."); Gorse v. Long Neck, Ltd., 107 B.R. 479, 482 (D. Del. 1989) ("The factors which must be considered for remand or abstention in this instance are the same."). Accordingly, Flintkote cites both remand and abstention cases in this Section.

matter jurisdiction of this Court in this matter, (d) the unsettled law as to what may be transferred, and (e) the potential that mandatory abstention applies in the case.

**a.     The State Court Action Will Have No Effect On The Efficient Administration Of The Estate.**

The State Court Action is not central to the administration of the Chapter 11 Case. See "Declaration of David J. Gordon In Support Of Debtor's Opposition To Emergency Petition Of Imperial Tobacco Canada Limited For An Order Of Transfer Pursuant To 28 U.S.C. § 157(b)(5) (the "Gordon Declaration") at ¶ 6. As stated in the Motion to Approve the Joint Prosecution Agreement that the Bankruptcy Court granted, "confirmation of a plan in these cases is in no way dependent upon the resolution of the Dividend Recovery Litigation." See Pedlar Declaration at Exhibit 3, p.5 ¶11; Gordon Declaration at ¶ 6 ("the State Court Action will not impact the timing or the course by which the Chapter 11 Case progresses toward confirmation"). In selecting the forum for the State Court Action, the Estate Representatives collectively determined that prosecution of the State Court Action in the state court would not delay confirmation. Moreover, the Bankruptcy Court employed special litigation counsel in this matter under Bankruptcy Code section 327(e) (see Pedlar Declaration at Exhibit "2"), which by definition only applies to matters not relating to the trustee's or debtor in possession's "conducting the [bankruptcy] case." See 11 U.S.C. § 327(e).

In the Chapter 11 Case, when it moved to withdraw the reference to the Bankruptcy Court, Imperial Tobacco adopted the Debtor's position that the State Court Action will have no bearing on the Chapter 11 Case, conceding that this factor supports abstention:

> The Debtors acknowledge that their ability to go forward and confirm a plan does not hinge on the resolution of the [State Court Action]. . . . As such, the withdrawal of the reference will not hamper the efficiency of the bankruptcy process.

"Imperial Tobacco Canada Limited's Memorandum Of Law In Support Of Its Motion To Withdraw The Reference To The Bankruptcy Court With Respect To The Debtors' Join

Prosecution Motion" at p. 18, a copy of which is attached to the Pedlar Declaration as Exhibit "7".

The only significant impact the State Court Action may have on Flintkote's chapter 11 estate is to increase the recovery available for present and future asbestos claimants. However, a potential realization of assets for the estate is insufficient to warrant the retention of federal jurisdiction. See Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 408 (S.D.N.Y. 1991). Further, this Court should look to the Debtor, the ACC and the FCR for their collective judgment on whether this matter needs to be tried in Delaware as part of the reorganization process, not to Imperial, an entity that is a stranger to the bankruptcy case and that stripped $525,000,000 in assets from Flintkote. The first factor favors abstention.

> **b.    State Law Issues Predominate; There Are No Disputed Bankruptcy Issues In The State Court Action.**

Congress has made it plain that in cases where purely state law causes of action are asserted, "the federal courts should not rush to usurp the traditional precincts of the state court." Mattingly v. Newport Offshore, Ltd., 57 B.R. 797, 799-800 (D.R.I. 1986). Thus, "a court may abstain purely in the interest of comity with state courts or out of respect for state law." Scherer v. Carroll, 150 B.R. 549, 552 (D. Vermont 1993) (personal injury cases do not involve expertise peculiar to federal courts, are grounded in state law and should be heard by state courts).

It is almost axiomatic that state court actions involving disputes under state law should be resolved in the state courts. The District Court in Shubert v. Roche Holding AG, 157 F.Supp.2d 542 (E.D. Pa 2001), endorsed that position:

> Out of respect for the state court system and concepts of federalism, it makes sense to have these [state law] claims heard in a state forum. . . . [T]his case involves only state law claims. The citizens are not diverse and no federal question is raised. While this Court is regularly faced with the challenge of applying state law, and I have no doubt that I could effectively accomplish that task here, I heed to the maxim that state courts are better suited to handle state claims.

Id. at 547.

The Complaint is based *in its entirety* on state law claims.  The State Court Action seeks redress for wrongful death and personal injuries related to exposure to asbestos, the recovery of illegal dividends under state common law, the avoidance of transfers based on state fraudulent transfer or conveyance law, damages for malpractice and for breach of fiduciary duty, the imposition of state law constructive trust, alter ego, and restitution remedies, and declaratory relief with respect to state law contract rights, all of which are the province of the state courts.  See Williams v. Shell Oil Co., 169 B.R. 684, 693 (S.D. Cal. 1994) (predominance of state law claims supports remand); White Motors, 761 F.2d at 274 ("federal courts should be hesitant to exercise jurisdiction when 'state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.'"), quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

The only federal "right" implicated in the Complaint is the *standing* granted to the debtor in possession under 11 U.S.C. 544(b) to assert *the state law rights* of any claimant who could avoid the dividends under applicable state law.[13]  See Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin), 179 B.R. 913, 926 (Bankr. E.D. Cal. 1995) (remand under § 1452(b); a federal court should not try a fifteen-count state court action where the federal question (dischargeability) merely requires applying one uncontested fact to settled federal law); McCarthy v. Prince (In re McCarthy), 230 B.R. 414, 418 (9th Cir. BAP 1999) (pursuit of state law fraudulent transfer under Bankruptcy Code § 544(b) insufficient to prevent remand; "[t]here is nothing wrong with letting a state court decide a matter over which it has concurrent jurisdiction."); Scherer, 150 B.R. at 551 (D. Vermont 1993) (existence of personal injury claims supported remand).  Thus, the second factor favors abstention.

---

[13]  Bankruptcy Code section 544(b), 11 U.S.C. § 544(b)(1), mere grants a trustee or debtor in possession *standing* to pursue, on behalf of a creditor, *state court causes of action to avoid transfers*, much the same as Bankruptcy Code section 323, 11 U.S.C. § 323, confers standing on a trustee to represent the estate and sue on its behalf on claims owned by the debtor.

c.    **The State Court Action Presents Difficult And Unsettled Issues Of State Law.**

The State Court Action involves numerous issues of state law, including: (a) the myriad of California state law questions which arise in asbestos-related personal injury claims, and the amount of damages; (b) the state law limitation periods, if any, for a claimant who has been exposed to a toxic substance before a fraudulent transfer or illegal dividend, but has not manifested an injury until after the transfer; (c) the state law basis to toll applicable limitations periods, if any; (d) the state law fiduciary duties owed to all creditors when a corporation is in the zone of insolvency (i) not to make dividends to shareholders, and (ii) not to favor present claimants over future claimants; (e) the standard of care applicable to the activities of legal counsel, especially when representing conflicting interests and providing incorrect legal advice; (f) standards for imposing a constructive trust on dividends received through wrongful acts and mistakes; (g) application of alter ego liability on a company which strips a subsidiary of its assets and continues to dominate and control it as a vehicle for "running out" mass tort liabilities;[14] (h) interpretation of state law contract rights, and (i) the choice of law applicable to these issues.

On the last point, if this case is transferred to this Court, this Court will be in the unfamiliar position of applying California choice of law to this action.    Imperial Tobacco assumes, matter-of-factly, that Delaware law applies to the alter ego claim.    We believe Imperial Tobacco is wrong.    But if there is a conflict between Delaware and California alter ego law, and if this case were to be transferred here, this court, as the transferee court, must apply the choice of law rules of the original forum state.    Van Dusen v. Barrack, 376 U.S. 612, 639 (1964); Satellite Financial Planning Corp. v. First Nat. Bank of Wilmington, 633 F. Supp. 386, 393 (D. Del. 1986).    Because Imperial Tobacco asks that the State Court Action be transferred from the

---

[14] Just the state law alter ego claim alone will include such factual issues such as (i) Flintkote's ability to pay present and future claims at the time of the wrongful dividends (ii) the extent of Imperial Tobacco's domination and control over the formation of Flintkote subsidiaries, the sale of the stock of those subsidiaries, and the payment of the dividends, and (iii) the years of post-dividend domination.

District Court in San Francisco, the Delaware District Court must apply California choice of law rules.

California follows a "governmental interest analysis" to resolve conflicts of laws. Washington Mutual Bank v. Superior Court, 24 Cal. 4th 906, 919 (2001). Imperial Tobacco has no basis – in law or fact – to assume that Delaware law would apply to this case where a substantial part of the conduct giving rise to the claims asserted by both Flintkote and the Hopkins Family occurred in California, where none of the conduct occurred in Delaware, where Flintkote is a long-time California-headquartered company, where Imperial Tobacco stripped $525,000,000 from Flintkote, rendering it unable to compensate California residents who were injured when exposed to Flintkote's asbestos products, and where the only connection to Delaware is the fact that Flintkote (only one of the plaintiffs in this case) merely is incorporated in Delaware.

All of the issues described above are within the expertise of the state court; none requires the expertise of this Court with respect to any federal issues. Thus, the third factor favors abstention.

### d.    There Is A Related Proceeding Already Pending.

The Hopkins Family and Flintkote, as debtor in possession, supported by all constituencies in Flintkote's Chapter 11 Case, chose to pursue their rights in the San Francisco Superior Court, which choice was made known to the Delaware Bankruptcy Court. See Chambers v. Marathon Home Loans (In re Marathon Home Loans), 96 B.R. 296, 300 (E.D. Cal. 1989) (bankruptcy court's permission to prosecute claim in state court is alone sufficient equitable grounds to warrant remand).

The State Court was an appropriate choice because (i) the Superior Court has extensive experience in wrongful death and asbestos-related matters, (ii) this case does not require the special expertise of a district judge and presents issues of the type that are routinely considered by the judges of the San Francisco Superior Court, (iii) Flintkote was and remains a California-based

business; (iv) the illegal dividends were declared in and paid from San Francisco, (v) Imperial Tobacco's domination and control over the sale of Flintkote's going concern businesses took place in San Francisco, (vi) the malpractice took place in San Francisco, (vii) Flintkote's present senior employees are based in San Francisco, (viii) Norman Hopkins, Jr. worked in California, was exposed to asbestos in California, and died of mesothelioma in California, (ix) Plant and Uniroyal are subject to suit in the San Francisco Superior Court, (x) Flintkote's and the Hopkins Family's chosen litigators are located in Northern California, and (xi) Imperial Tobacco is subject to personal jurisdiction in California. There is simply no reason that the trial in this case be conducted outside of California and in a federal court. See e.g., Williams, *supra*, 169 B.R. 694 (local plaintiff, local counsel, and local evidence dictated remand); White Motors, 761 F.2d at 274. Because there is already a related proceeding pending in California, the fourth factor favors abstention.

e.    **There Is No Jurisdictional Basis Other Than Section 1334.**

The personal injury claims asserted by the Hopkins Family against Imperial Tobacco are based entirely on state law. There is no federal question or diversity jurisdiction implicated by the State Court Action. Indeed, as set forth in Section D, *infra*, given that the section 157(b)(5) motion involves an attempt by a nondebtor to transfer a single personal injury case in which the debtor is not named as a plaintiff and opposes transfer, jurisdiction even under section 1334 is questionable, at best, with regard to the personal injury claims that are the subject of the section 157(b)(5) motion. "[A]ny doubts concerning removal must be resolved against removal and in favor of remanding the case to state court." Luevano v. Dow Corning Corp., 183 B.R. 751, 752 (W.D. Tex. 1995). This is because an incorrect decision not to remand a case creates a subject matter jurisdiction problem that is not curable. See Section D, *infra*. Thus, the fifth factor favors abstention.

  **f.**  **The State Court Action, Particularly The Claims Of The Hopkins Family Against Imperial Tobacco, Are Not Significantly Related To The Main Bankruptcy Case.**

   As noted above, the State Court Action is not central to the main Chapter 11 Case. See Section III.C.2.a, *supra*. Moreover, the pendency of the State Court Action is not necessary to plan development and, to the extent brought on behalf of the Flintkote estate, can be pursued by the present representatives of the estates, by a subsequent chapter 11 or 7 trustee, or by a trust established for the benefit of creditors pursuant to a confirmed plan. See 11 U.S.C. § 1123(b)(3)(B). All major constituencies in the Chapter 11 Case—the debtor in possession, the ACC and the FCR—have determined that the State Court Action should be pursued in the state court, and each has joined in that action as a co-plaintiff. "This is a state law action and a state court is better able to respond to a suit involving state law." Drexel, *supra*, 130 B.R. at 408 *quoting* Midlantic Nat'l Bank/Citizens v. Comtek Electronics, Inc. (in re Comtek Electronics, Inc.), 23 B.R. 449, 451 (Bankr. S.D.N.Y. 1982); Federal-Mogul, 282 B.R. at 316 (abstention appropriate in case involving attempted section 157(b)(5) transfer by nondebtor).

   The fact that the Bankruptcy Court may have to approve a settlement of the State Court Action—particularly a settlement that has the support of the three co-plaintiffs in the case, the Debtor, the ACC and the FCR—is no reason to transfer the case to Delaware. Bankruptcy courts approve settlements of litigation that is not before them all the time. That does not mean there is a "waste of resources" in trying the case in California as Imperial Tobacco argues. (Brief, p. 16.) There is no duplication of effort involved, as this case, if retained by this Court, will not be tried before the Bankruptcy Court either. And the argument proves far too much. A debtor may sue third parties wherever jurisdiction and venue rules permit, as it chooses, using its judgment. Were Imperial Tobacco correct, every major claim a debtor brings against a third party could give rise to "related to" jurisdiction and removal by defendant under 28 U.S.C. § 1334 and 1452, followed by a transfer motion under section 1404(a) (just like Imperial Tobacco did in the

California case), with the argument that matters need to be "centralized." That makes sense when the <u>case is against the debtor</u>. It makes no sense when the <u>debtor is bringing the case</u>.

Similarly, the fact that a trust may be approved under Bankruptcy Code section 524(g) in this case has nothing to do with venue, as the uncontroverted evidence presented by Flintkote is that this action does not affect the plan process. <u>See</u> Gordon Declaration at ¶ 6.

Finally, Imperial Tobacco also argues that "[w]hile the [Hopkins Family] may prefer to litigate the [State Court Action] in California, the [Hopkins Family] are but a tiny fraction of the more than 155,000 asbestos claims pending against Flintkote." (Transfer Brief at 16) However, Imperial Tobacco has no standing to argue what the other asbestos claimants may want, and apparently forgets that the representative of present asbestos claimants, the ACC, and the representative of all future asbestos claimants, the FCR, *which does speak for the 155,000 asbestos claimants*, chose the Hopkins Family as the test case for alter ego liability and chose to bring that case in California. Thus, the sixth factor favors abstention.

### g. The Substance Of Any Core Matter Is Determined Exclusively By State Law.

The seventh factor requires this Court to examine "the substance rather than the form of an asserted 'core' proceeding." <u>Astropower Liquidating Trust</u>, 335 B.R. at 330. The causes of action asserted by the Hopkins Family involve no "core" claims against Imperial Tobacco. Moreover, the "substance" of the only arguably "core" claims asserted by the Flintkote Plaintiffs —the section 544 claims—are based entirely on state law; namely, recovery by creditors under common law for the wrongful payment of dividends, and recovery by creditors under state fraudulent transfer law.

Bankruptcy Code section 544 grants *standing* to the debtor in possession under 11 U.S.C. 544(b) to assert the state law rights of creditors. That does not create a federal issue any more than the *standing* granted to a trustee under Bankruptcy Code section 323, 11 U.S.C. § 323, to represent the estate and sue on its behalf, turns every state court collection action brought by the

23

trustee into a federal case. "[F]ederal jurisdiction may not be invoked where the right asserted is non-federal, merely because the plaintiff's right to sue is derived from federal law, or because the property involved was obtained under federal statute." Nat'l Mut. Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 597 (1949). "The federal law provided, not the right sought to be established, but only the authority of the trustee to establish it. The fact that the congressional power of bankruptcy granted by Art. I could open the court to the trustee does not mean that such suits arise under the laws of the United States." Id. at 599. See also Nat'l City Bank v. Coopers & Lybrand, 1985 WL 6424 (D. Minn. 1985), aff'd 802 F.2d 990 (8th Cir. 1986) (no federal question under section 1331 raised by section 544 action based on state law claims); Breed Technologies v. Allied Signal Inc., 128 F.Supp.2d 743, 746 (D. Del. 2001), rev'd on other grounds, 298 F.3d 263 (3rd Cir. 2002) (no federal jurisdiction over section 544(b) action raising causes of action under state law other than under 28 U.S.C. § 1334), Thus, the seventh factor favors abstention.

> **h.      Severance Of The State Court Action Is Not Appropriate.**

Under the eighth factor, this Court is to examine "the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court. Id. Here, however, the claims of the Hopkins Family are all state law claims and include assertion of rights against Plant, another California defendant. This Court may not have jurisdiction over the Hopkins Family's claims against Plant (just as it may not have jurisdiction over the Hopkins Family's claims against Imperial Tobacco), and to sever the relationship between the state law alter ego claims of Flintkote from the state alter ego claims of the Hopkins Family would not be appropriate. White Motors, 761 F.2d at 273-74. The only economical way to proceed with this case is to leave it exactly were the Debtor chose to file it.

One of the reasons that Hopkins Family joined with the Estate Representatives in pursuing alter ego claims is that the prosecution of an alter ego remedy against the major tobacco company of Canada will be a daunting task that an individual claimant might not be financially

capable of undertaking. See Gordon Declaration at ¶ 5. However, by pooling resources with the estate, the Hopkins Family can feasibly pursue alter ego remedies in conjunction with the estate's efforts, particularly since many of the facts supporting the alter ego claim, such as Imperial Tobacco's actions in stripping Flintkote of $525,000,000, are also part of the Estate Representative's other claims against Imperial Tobacco. Id. Section 157(b)(5) does not in terms provide for transfer of the non-personal injury claims to this Court, and it makes no sense for the alter ego actions or the wrongful death claims to be tried twice, or in a court where the estate's avoiding power claims are not being tried simultaneously.

      **i.**      **The State Court Action Would Be An Unnecessary Burden On This Court's Docket.**

The Complaint initiating the State Court Action contains 16 causes of action, none of which raises a federal issue. As set forth in Section III.C.1.c, *supra*, this Court would be applying California choice of law issues to each of the causes of action. All the issues to be determined are within the expertise of the state court; none requires the expertise of a federal judge with respect to federal issues.

This is a major case with numerous factual issues, which typically means much discovery, many motions, and a long trial. All of that will be a major burden on this Court. And for what purpose? This Court should have no interest in applying a statute intended to benefit the Debtor so that a stranger to the Chapter 11 Case can use the circumstance of Flintkote's financial demise (which Imperial Tobacco largely contributed to) to structure litigation against it. This would not be appropriate: Again, "[b]ankruptcy jurisdiction . . . was not conferred for the convenience of those not in bankruptcy . . . ." Pacor, 743 F.2d at 966 (3rd Cir. 1984).

Just as it is appropriate for this Court to consider whether the exercise of "federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts" in reviewing federal question jurisdiction, Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 125 S.Ct. 2363, 2367 (2005), it is equally

appropriate to consider the sound division of labor between the state and federal courts in deciding whether to abstain. Out of respect for comity for the state court and the Estate Representative's choice of forum, this Court should exercise its discretion and abstain in this matter.

### j.    Imperial Tobacco Is Clearly Forum Shopping.

"All courts should attempt to protect both the state and federal court systems from the illegitimate gamesmanship involved in forum shopping." Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service, Inc.), 81 B.R. 422, 428 (Bankr. S.D. Tex. 1987). Accordingly, under Astropower Liquidating Trust, 335 B.R. at 330, the Court must examine "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties." *Here that likelihood is 100%,* as Imperial Tobacco has admitted that this is exactly what it is doing.

On Friday, May 8, 2006, Imperial Tobacco filed (a) a petition removing the State Court Action to the District Court for the Northern District Of California (the "Removal Petition"); (b) an "Emergency Petition" with this Court to move the State Court Action to the Delaware District Court under 28 U.S.C. § 157(b)(5) (the "Emergency Petition"); and (c) a motion to withdraw the reference with respect to the matters calendared before the Bankruptcy Court on May 15, 2006. Imperial Tobacco succinctly set forth the reason for all this activity in "Imperial Tobacco Canada Limited's Motion For Continuance Of Hearing On Joint Prosecution Motion" (the "Continuance Motion") filed in the Bankruptcy Court: *"These pleadings were filed with the "goal of consolidating all issues regarding the [State Court Action] in the Delaware District Court*." See Pedlar Declaration at Exhibit 10, p. 4 (emphasis added).

Imperial Tobacco has candidly admitted that it wants to move the case because it thinks that Delaware law will apply. (Transfer Brief at 17). However, as set forth in Section III.C.2.c, *supra*, transfer does not accomplish that goal. Instead, this Court would have to apply California's choice of law issues to this matter.

26

Imperial Tobacco is also playing fast and loose with the courts on the choice of law issue. In the Bankruptcy Court, it has made arguments based exclusively on the proposition that California law will apply to the alter ego Claims, contending that:

- "In In re Folks, the BAP considered Davey, Stodd [three important federal and state alter ego cases decided under California law] and numerous other cases *in deciding that under California law* an alter ego claim belongs exclusively to the debtor and its estate where the claim is based on an alleged harm to creditors generally."[15]

- "Because the Alter Ego Remedies are comprised of 'generalized' claims (and not "particularized" claims), Flintkote alone has standing to assert all Alter Ego Remedies under existing Ninth Circuit precedent *interpreting California law*. Id. at 9 (emphasis added).

- Imperial Tobacco offers to stipulate that Flintkote has standing to sue on alter ego claims "despite the existing clarity *under California law*." Id. at 9 n.5 (emphasis added).

- "[T]he Court should reject the Alter Ego Agreement as *it violates (and is unenforceable under) California Law*. Id. at 13 (emphasis added).

Perhaps most egregious, Imperial Tobacco is clearly forum shopping, but it is not "forum buying." Instead, it seeks this Court's assistance in transferring the case out of California—a venue where there is clear personal jurisdiction (see Section III.C.2., *infra*)—to Delaware, where it apparently intends to fight personal jurisdiction. Imperial Tobacco is thus blatantly forum shopping for a number of reasons, any one of which is appropriate to trigger abstention.

The Flintkote Plaintiffs and the Hopkins Family decided how to structure the litigation to be most beneficial to the estate. They had no desire to structure the case against Imperial Tobacco in the manner most favorable to it or to select a proper place for trial that would please Imperial Tobacco. They do not want the case in the District Court in Delaware, far from where they and their lawyers live and work. The architecture of the State Court Litigation reveals that careful thought went into where and how to sue, and the plaintiffs are understandably quite happy to have the case heard right where they filed it.

---

[15] See Pedlar Declaration, Exhibit "11" at p.7 (emphasis added).

"[T]here is ordinarily a strong presumption in favor of plaintiffs' choice of forum, which may be overcome only when the private and public factors clearly point towards trial in the alternative forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, 102 S.Ct. 252, 265-66 (1982) (forum non conveniens case). A similar guideline is applied in remand cases. Drexel, *supra*, 130 B.R. at 408 ("Drexel is the debtor in the bankruptcy cases and chose State Court as the forum to best advance the interests of the estate"); Shubert, 157 F.Supp.2d at 547 ("remand affords proper deference to the plaintiff's choice of forum."); Enron Corp. v. Arora, 317 B.R. 629, 647 (Bankr. S.D.N.Y. 2004) ("A debtor's choice of forum is entitled to great weight if venue is proper.").

Imperial Tobacco cites In re Continental Airlines, Inc., 133 B.R. 585 (Bankr. D. Del. 1991) and Hohl v. Bastian, 279 B.R. 165 (W.D. Pa. 2002) for an alleged presumption in favor of "home court" venue in the bankruptcy court district. Continental involved a proceeding brought *by the debtor*. Hohl involved a suit against an officer of the debtor. Both were in bankruptcy court. Neither supports the proposition ascribed to it by Imperial Tobacco.

The so-called "home court presumption" arises in considering whether to transfer bankruptcy proceedings under 28 U.S.C. § 1412. Whatever its applicability to a transfer to a district court, the "presumption" was created to facilitate administration of the debtor's estate, and, to the extent, if any, it remains a viable doctrine, it is not applied against the debtor.

> Stated differently, this presumption exists to help the debtor, not to facilitate forum shopping for co-defendants.

In re Harnischfeger Industries, Inc., 246 B.R. 421, 440 (Bankr. N.D. Ala. 2000).

### k.    The Right To Jury Trial Favors Abstention.

The parties have a right to a jury trial because this is in part a personal injury cause of action, and because Flintkote demanded a jury trial. If this Court does not abstain, it will have to hear the case. Thus, this factor also favors abstention.

l.    **The Presence Of Non-Debtor Parties.**

The Hopkins Family, Plant, and Imperial Tobacco are all non-debtor parties.    The members of the Hopkins Family are California residents, suing with regard to activities that occurred in California.    Norman Hopkins, Jr. worked in California, was exposed to asbestos in California, and died of mesothelioma in California.    The Hopkins Family is entitled to have their claims heard under California law by a California jury.    The Hopkins Family's counsel is located in California.    Plant is located in California.

It is not clear whether this Court can transfer the claims against Plant, or Flintkote's claims, including its alter ego claims.    See section III.D, *infra*.    Imperial Tobacco may be trying to split up claims that should be tried together.    There is no reason to do that.    In <u>White Motors</u>, the fact that the case might have to be tried twice because of the presence of other defendants—"defendants who cannot be transferred out of the jurisdiction they are now in" —together with the possibility of "inconsistent rulings and verdicts and multiple res judicata problems" was "a *strong* reason for leaving the cases where they are."    761 F.2d at 273-74 (emphasis added).

m.    **This Court Should Abstain Because Imperial Tobacco's Attempted Use Of Section 157(b)(5) Is Inconsistent With The Intent Of The Statute.**

For the reasons set forth in Section III.A, *supra*, this Court should abstain because section 157(b)(5) is intended for the benefit of the debtor, and Imperial Tobacco's attempted use of the statute is for an improper purpose.

2.    **This Court Should Not Assist Imperial Tobacco In Its Quest To Avoid Personal Jurisdiction.**

While concurrently maneuvering in four different courts, Imperial Tobacco states that "the District of Delaware is the appropriate venue for the [State Court Action]," (Transfer Motion at 15), yet also purports to reserve jurisdictional defenses:

> By filing this Petition, [Imperial Tobacco] does not, and has not agreed to, accept or attorn to the jurisdiction of any court within the United States. [Imperial Tobacco reserves any and all of its rights in the underlying litigation, including the right to contest personal jurisdiction over [Imperial Tobacco] in the appropriate forum.

See Transfer Brief at p.1 n.1. This attempted reservation of rights can only be for the purpose of objecting to personal jurisdiction if the Transfer Motion succeeds.

In the State Court Action, Imperial Tobacco appeared generally. It filed an answer and did not move to quash service of process. Imperial Tobacco thereby waived any defense of lack of personal jurisdiction. See Calif. Code Civ. Proc. § 418.10; Roy v. Superior Court, 127 Cal.App.4th 337, 345, 25 CR 3d 488 (2005) (defendant must move to quash to challenge personal jurisdiction; answer alone does not substitute.) Leaving the case in the California court removes any jurisdictional issue.

If this Court transfers the case to itself, there promises to be a jurisdiction battle, and it is likely the case that Imperial Tobacco, a Canadian company, has far fewer contacts in Delaware than it has in California. See e.g., Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc., 295 F.Supp.2d 400, 403 (D. Del. 2002) (discussing elements of Delaware's long-arm statute and finding no jurisdiction over Canadian defendant). At this time, Flintkote simply does not know the extent of Imperial Tobacco's activities in Delaware. But Flintkote does know that Imperial Tobacco has been very active in California: (1) Imperial Tobacco sent its employees into California to create the subsidiaries that isolated Flintkote's asbestos liabilities from its operating assets, to control the sale of the stock of those subsidiaries, and to strip Flintkote of its assets; (2) Imperial Tobacco's long time attorneys were provided to Flintkote to use as its attorneys, and the erroneous and ethically conflicted legal advice given by Imperial Tobacco's counsel to Flintkote was given in California, (3) the wrongful dividends were declared in and paid from California; and (4) the years of domination and control by Imperial Tobacco took place in California.

It would be inappropriate for this Court to place the Flintkote estate at risk on the issue of personal jurisdiction, or impose on it the costs of such a fight; accordingly, it should abstain. The State Court Action was filed in California and belongs in California.

* * * * *

Every single factor (and more) normally analyzed in the context of discretionary abstention favors abstention and denial of the Transfer Motion. Collectively, the case for discretionary abstention is overwhelming. If this Court grants discretionary abstention, it would not be required to reach the issues presented below.

**D.    The Scope Of This Court's Subject Matter Jurisdiction Is Questionable, At Best.**

**1.    There May Not Be Sufficient "Related To" Jurisdiction Over the Hopkins Family's Claims To Entertain A Section 157(b)(5) Motion.**

This Court's subject matter jurisdiction to hear this case is very thin, if it exists at all. The seminal case on "related to" jurisdiction in the Third Circuit with respect to personal injury claims, Pacor, 743 F.2d 984, similarly involved, in the context of a removal and remand proceeding, a personal injury action between nondebtor parties, where the defendant had also filed a third party claim against Johns-Manville Corporation. Id. at 986. Finding that the personal injury action between the nondebtor parties would have no adverse effect on Johns-Manville's bankruptcy case, the Third Circuit concluded that the matter was not sufficiently "related to" the Johns-Manville case to invoke the jurisdiction of the bankruptcy court pursuant to an attempted removal of the case by the nondebtor defendant. Id. at 995-96.

Subsequently, in Celotex Corp. v. Edwards, 514 U.S. 300 (1995), the Supreme Court cited Pacor with approval: "We also agree with [Pacor's] observation that a bankruptcy court's 'related to' jurisdiction cannot be limitless." Id. at 308; see also, In re Asbestos Litig., 271 B.R. 118, 124 (S.D.W.Va 2001) ("common sense cautions against an open-ended interpretation of the 'related to' statutory language in a universe where everything is related to everything else"). Similarly, the Sixth Circuit in Dow Corning also recognized that there is a vast difference

between *the debtor* in Dow Corning using section 157(b)(5) for its intended purpose to centralize mass tort litigation *against the debtor*, as opposed to a request by a non-debtor defendant for a section 157(b)(5) transfer of a single personal injury claim.

> In addition, we believe there is a qualitative difference between the single suit involved in *Pacor* and the overwhelming number of cases asserted against Dow Corning and the nondebtor defendants in this case. A single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor's reorganization plan as that posed by the thousands of potential indemnification claims at issue here.

Dow Corning, 86 F.3d at 494.

The Third Circuit's analysis of "related to" jurisdiction in Pacor played a central role in the Federal-Mogul case—the only nondebtor section 157(b)(5) case reported in the Third Circuit. In Federal-Mogul, a series of nondebtor automobile manufacturers sought to remove asbestos claims pending against them, as well as, in most cases, Federal-Mogul, which was a manufacturer of brake pads containing asbestos and the debtor in a chapter 11 case. Federal-Mogul, 282 B.R. at 303; Federal-Mogul, 300 F.3d at 372-73. However, the District Court found that no basis existed for a section 157(b)(5) transfer that the debtor had not requested. Holding that the "possibility that the loser of an unrelated dispute might seek to recover its losses from the debtor does not make the dispute between non-debtors subject to the jurisdiction of the bankruptcy court" (282 B.R. at 308), the court found that "related to" jurisdiction did not extend to these nondebtor personal injury claims, and thus denied the requested transfer under section 157(b)(5). This ruling in Federal Mogul was made in a context where (a) the debtor had, in most cases, actually been named in the underlying tort action, and (b) the suit against the nondebtor automobile manufactures could well give rise to indemnity claims against the debtor.

Most recently the Third Circuit has addressed "related to" jurisdiction with regard to the assertion of claims against third parties in Combustion Engineering, 391 F.3d 190. In that case the debtor had sought to obtain a section 524(g) injunction in favor of non-debtor affiliates with respect to asbestos claims that were not derivative of the asbestos claims against the debtor. The

Third Circuit rejected the requested relief because the bankruptcy court lacked "related to" jurisdiction. After an extensive review of its holdings in <u>Pacor</u> and <u>Federal Mogul</u>, the Third Circuit affirmed its view of "related to" jurisdiction:

> The test articulated in <u>Pacor</u> for whether a lawsuit could "conceivably" have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy without the intervention of yet another lawsuit.

391 F.3d at 227.

To counter the obvious similarities of this case to <u>Pacor</u>, Imperial Tobacco cites a number of cases for the proposition that the State Court Action is "related to" the Flintkote bankruptcy, thereby conferring jurisdiction on this Court under 28 U.S.C. § 1334. Flintkote agrees that *its* claims against Imperial Tobacco, including its causes of action under Bankruptcy Code section 544, are "related to" its bankruptcy case under the broad definition afforded to that term under applicable law. However, the section 157(b)(5) motion before this Court is not addressed to Flintkote's claims against Imperial Tobacco, but rather to the claims of the Hopkins Family against Imperial Tobacco, and it is those claims that must be "related to" the Flintkote chapter 11 case to confer subject matter jurisdiction under section 157(b)(5). And it is not clear that they are.

Imperial Tobacco postulated jurisdictional "hook" is its contention that the claims asserted by the Hopkins Family in the State Court Action "are in fact personal injury tort claims against Flintkote" (Transfer Motion at 4), arguing that the State Court Action is "the liquidation of a claim against Flintkote and subsequent recovery from [Imperial Tobacco]." (Transfer Motion at 13). However, any effect on the Flintkote estate of the Hopkins Family's claims is remote, not direct. Here, Imperial Tobacco is in a similar position to an insurer with adequate policy limits but who denies coverage.[16] There will be no effect on the Chapter 11 Case if the Hopkins Family

---

[16] Flintkote's joinder in the action seeking declaratory relief as to Imperial Tobacco's status as its alter ego does not alter the situation any more than would Flintkote's joinder in an insurance litigation for a declaration of coverage if the insurer denied liability.

loses. If the Hopkins Family wins, like an insurer, Imperial Tobacco will pay the judgment. Any other effect will depend on what Imperial Tobacco does, but in any case under the Third Circuit's test for "related to" jurisdiction in <u>Combustion Engineering</u>, the effect will depend upon a *separate, independent legal proceeding*—either a plan or reorganization or a series of additional lawsuits. If, for example, Flintkote and Imperial Tobacco reach a settlement and Imperial Tobacco agrees to contribute money to an asbestos trust to receive the protection of a section 524(g) injunction, the estate would be affected, but only as a result of separate, agreed-upon settlement under a plan; how much depends on the size of the contribution. If Imperial Tobacco does not settle, then any effect would depend on whether asbestos claimants seek recoveries from Imperial Tobacco in the tort system *by additional lawsuits* to establish their alter ego remedies based on their underlying tort claims and the doctrines of collateral estoppel and *res judicata*. Under either alternative, there is no "related to" jurisdiction over the Hopkins Family's claims against Imperial Tobacco under the <u>Combustion Engineering</u> test, and such contingent effects on the bankruptcy estate do not allow Imperial Tobacco to transfer the case under Section 157(b)(5) any more than Section 157(b)(5) would allow insurers to remove every insured tort claim against a debtor to the bankruptcy court under section 157(b)(5).

There is a very good reason why "any doubts concerning removal must be resolved against removal and in favor of remanding the case to state court." <u>Luevano</u>, 183 B.R. at 752 (W.D. Tex. 1995); <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 104 (1941) (removal case; remand required "if any doubt exists over whether removal was proper"). Because subject matter jurisdiction can be raised at any time, and can lead to a reversal of a judgment and dismissal of a case, taking on a case with problematic subject matter jurisdiction can be a tremendous waste of judicial and party resources. It can also cause great harm to a plaintiff, which may not, after the passage of time, have access to a court that does have subject matter jurisdiction. Presently the State Court Action is properly venued in California; it should not be transferred here, thereby

creating an unnecessary jurisdictional issue with the potential for substantial harm to the Flintkote estate.

### 2.    The Scope Of The Claims That May Be Transferred Under A Section 157(b)(5) Transfer Motion Is Unsettled.

Imperial Tobacco's supposition that it has, by its section 157(b)(5) motion, sought to transfer the entire State Court Action to this Court may be incorrect. Congress knows how to distinguish between removal of an entire lawsuit and removal or transfer of merely a claim or cause of action. Compare 28 U.S.C. § 1441 with 28 U.S.C. § 1452.

> [D]ifferences between sections 1141 and 1452 are immediately apparent: first, under the latter, "any claim or cause of action" may be removed, while under the former, the entire suit is removed.

1 Collier on Bankruptcy, ¶ 3.07[1] at 3-85 (15th ed. rev. 2006); see also Retirement Systems of Alabama v. Merrill Lynch & Co., 209 F.Supp.2d 1257, 1264 (M.D. Ala. 2002).

Congress, in section 157(b)(5), limited the potential transfer relief available only to "personal injury tort and wrongful death claims." Hence, it is not clear whether the requested transfer by Imperial Tobacco would transfer any of the causes of action in the State Court Action asserted by Flintkote, or the Hopkins Family's claims against other defendants. This Court may be limited to taking on a small sliver of the State Court Action, with regard to which its jurisdiction is already subject to doubt (see Section III.D.1., *supra*) over the objection of each of the plaintiffs. It makes no sense to take that piece of the case and leave the Hopkins Family's underlying tort claim with respect to other defendants to be tried in another case, and to separate the Hopkins Family's alter ego action from Flintkote's alter ego and other claims. White Motors, 761 F.2d at 273-74 (the fact that the case might have to be tried twice because of the presence of other defendants—"defendants who cannot be transferred out of the jurisdiction they are now in" —together with the possibility of "inconsistent rulings and verdicts and multiple res judicata problems" was "a *strong* reason for leaving the cases where they are") (emphasis added).

3.    **Abstention Is Mandatory Under 28 U.S.C. § 1334(c)(2).**

Section 1334(c)(2) of the Judicial Code provides:

> Upon the timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).[17] Once again, the issue of mandatory abstention raises an unnecessary risk of subject matter jurisdiction.

The Hopkins Family's claim meets all the criteria required for mandatory abstention. First, this request to abstain was filed timely; it was filed within 10 business days following the filing of the 157(b)(5) transfer motion. Second, if there is any jurisdiction at all over the Hopkins Family's claims under Judicial Code section 1334(b), such jurisdiction is "related to" jurisdiction, not "arising in or under" jurisdiction.[18] Third, the Hopkins Family asserts only state law causes of action against the defendants in their litigation, as to which there is no diversity. Thus, the litigation could not have been brought in the federal court absent jurisdiction under section 1334. Fourth, the State Court Action has been commenced. Finally, the State Court Action can be

---

[17]  Imperial Tobacco argues, based on the original language of the Alter Ego Agreement, that the relief that the Hopkins Family seeks is "the liquidation of a claim against Flintkote and subsequent recovery from [Imperial Tobacco]." (Transfer Brief, p. 13.) This argument is flawed. If the State Court Action results in a judgment, that judgment will be against Imperial Tobacco and will be paid by Imperial Tobacco; accordingly, it will not result in a claim against the estate. Moreover, when Imperial Tobacco raised this issue, because there were many circumstances where the State Court Action may not resolve the Hopkins Family's claims in a timely fashion, the parties amended the Alter Ego Agreement to address these concerns. See Pedlar Declaration at Exhibits 9 and 10, which amendment is before the Bankruptcy Court for approval. As a result, the language that might have resulted in an exception to mandatory abstention under 28 U.S.C. § 157(b)(2) and (4) is no longer part of the Alter Ego Agreement, subject to court approval of such amendment.

[18]  While at least some of Flintkote's claims against Imperial Tobacco, such as it claims under Bankruptcy Code section 544, may arise under title 11, this 157(b)(5) motion is not about Flintkote's claims against Imperial Tobacco, it is about the claims of the Hopkins Family, and if this Court has jurisdiction at all over such personal injury and wrong death claims, it is only "related to" jurisdiction. See Section D.1, supra.

timely adjudicated in a State forum of appropriate jurisdiction. See Brayton Declaration at ¶ 3.

Accordingly, this case is subject to mandatory abstention.[19]

### CONCLUSION

For the foregoing reasons, this Court should exercise its discretion to abstain and deny

the requested transfer of the State Court Action under Section 157(b)(5).

Dated: May 19, 2006

PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

THE LAW OFFICE OF ALAN PEDLAR,
A PROFESSIONAL CORPORATION
1112 Via Malibu
Aptos, California 95003
Telephone: (831) 688-2667
Facsimile: (831) 401-2402

SNYDER MILLER & ORTON LLP
Stephen M. Snyder (CA State Bar No. 054598)
James L. Miller (CA State Bar No. 071958)
111 Sutter Street, Suite 1950
San Francisco, CA 94104
Telephone: 415-962-4402
Facsimile: 415-962-4401

KELLY C. WOOSTER, ESQ.
P. O. Box 62
Copperopolis, CA 95228
Telephone: (209) 785-2437
Facsimile: (209) 785-8455

MORGENSTEIN & JUBELIRER
Eliot S. Jubelirer (CA State Bar No. 061654)
Jean L. Bertrand (CA State Bar No. 083250)
One Market, Spear Street Tower
32nd Floor
San Francisco, CA 94105
Telephone: (415) 901-8700
Facsimile: (415) 901-8701

Co-Counsel for the Plaintiffs

---

[19]    While section 157(b)(4) of the Judicial Code provides that non-core proceedings under section 157(b)(2)(B) shall not be subject to the mandatory abstention provisions of section 1334(c)(2), this exclusion from requirements of mandatory abstention under section 1334(c)(2) does not apply to the claim of the Hopkins Family because section 157(b)(2)(B), on its face, only applies to "claims against the estate."

# UNREPORTED DECISION

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1985 WL 6424 (D.Minn.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota, Fourth
Division.
NATIONAL CITY BANK, as Indenture Trustee for
Holders of Gambles Credit Corporation, Ten
Percent (10%) Subordinated Notes Due June 1,
1998; and Nine and One-Half Percent (9 1/2 %)
Subordinated Notes Series A Due December 1,
1989 and Series B Due December 1, 1997, Plaintiff,
v.
COOPERS AND LYBRAND, Defendant.
No. CIV. 4-85-715

Nov. 1, 1985.

Allen D. Barnard, James C. Diracles, Robert L.
Meller, Jr., Best & Flanagan, Minneapolis, Minn.,
for plaintiff.
Robert R. Weinstine, Steven C. Tourek, Darron C.
Knutson, Winthrop, Weinstine & Sexton, 1800
Conwed Tower, 444 Cedar Street, St. Paul, Minn.,
Peter M. Kreindler, Roger P. Fendrich, Hughes,
Hubbard & Reed (of counsel), Washington, D.C.,
and David A. Lombardereo, Hughes, Hubbard &
Reed (of counsel), Los Angeles, Cal., for defendant.

MEMORANDUM AND ORDER
MacLAUGHLIN, District Judge.
*1 This matter is before the Court on plaintiff's
motion to remand this action to state court and
defendant's motion for a transfer of venue to the
United States District Court for the Central District
of California. The Court will remand this case to
state court, and therefore the Court will not address
the transfer motion.

*FACTS*

Plaintiff National City Bank (NCB) is the indenture
trustee for various notes issued by Gambles Credit
Corporation (GCC). GCC, a Nevada corporation,
was a subsidiary of Gamble-Skogmo, Inc. (GSK).

(GCC has now been merged into GSK.) GCC's
only corporate activity was to finance GSK's
accounts receivable, and GCC's only significant
assets were GSK's accounts receivable. GCC's
auditing and accounting were performed by the
defendant, Coopers & Lybrand (C & L). C & L is
a nationwide firm of certified public accountants,
with its national office in New York.

In August of 1980, the Wickes Corporation
(Wickes) acquired GSK and its subsidiaries,
including GCC. Wicks is a Delaware corporation,
with its corporate headquarters in San Diego,
California. C & L's San Diego office audited the
financial statements of Wickes and its subsidiaries,
including GCC, in 1981 and 1982. In April of
1982, Wickes and most of its subsidiaries, including
GSK and GCC, filed bankruptcy petitions under
chapter 11 (reorganization) of the Bankruptcy
Code. The bankruptcy proceedings took place in
the Central District of California.

An issue arose in the bankruptcy proceedings as to
whether GCC had perfected its security interests in
GSK's accounts receivable. As a debtor in
possession, GSK could avoid security interests
which were not properly perfected prior to GSK
filing in bankruptcy. *See* 11 U.S.C. §§ 544(a),
1107(a). Consequently, GSK might have been able
to avoid GCC's security interest in the GSK
accounts receivable. Another issue existed
surrounding GCC's security interests in GSK
accounts receivable. The issue was whether GSK's
obligation to GCC should be subordinated to GSK's
other obligations because GCC was actually an alter
ego of GSK.

In order to resolve these issues and establish that
GCC had a valid security interest in the accounts
receivable, the GCC creditors committee
commenced an adversarial proceeding in the
bankruptcy court in the Central District of
California. Instead of pursuing protracted litigation
to resolve these issues in the adversarial proceeding,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 2

Not Reported in F.Supp., 1985 WL 6424 (D.Minn.)
(Cite as: Not Reported in F.Supp.)

the parties reached a settlement. The settlement agreement stated that the issues involved in the adversarial proceeding "were extremely complex, both from a factual and legal point of view." Compromise Regarding Receivables ¶ 15, Lombardero Aff. Exh.C, at 9.

In this action plaintiff states that it received $23 million less under the settlement than the amount it was due. Plaintiff stresses that in the settlement agreement it reserved all its claims against "outside professionals retained by GCC prior to March 1, 1982," Compromise Regarding Receivables ¶ 17 H, Lombardero Aff. Exh.C, at 15, and that C & L is an outside professional within this reservation of rights.

*2 In an effort to enforce the rights it reserved against C & L, plaintiff filed an action against C & L in Hennepin County District Court. Plaintiff seeks to hold defendant C & L liable on the basis of the accounting and auditing work it performed for GCC. Plaintiff argues that if defendant had properly performed the audits of GCC, plaintiff would have been aware of the deficiencies in GCC's security interest in the accounts receivable. Plaintiff further asserts that if it had been aware of the deficiencies, it would have taken the steps necessary to ensure that GCC had adequate assets to fully pay GCC's indebtedness. Plaintiff bases its claims against defendant on state law causes of action, specifically fraud, negligence, and/or breach of contract. Defendant removed this action to federal court on May 23, 1985. The propriety of the removal of this case to federal court is now at issue.

*DISCUSSION*

Defendant removed this action from state to federal court claiming removal was proper under both 28 U.S.C. §§ 1441(a) (removal based on federal district court having original jurisdiction) and 1452(a) (removal of cases where bankruptcy jurisdiction exists). A party seeking removal always has the burden of establishing that removal is proper. *E.g., Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921); *Bor-Son Building Corp. v. Heller,* 572 F.2d 174, 181 n. 13 (8th

Cir.1978). If doubts exist as to the propriety of the removal, the case should be remanded. *Abing v. Paine, Webber, Jackson & Curtis,* 538 F.Supp. 1193, 1195 (D.Minn.1982).

*Section 1441(a)*

Section 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant...." 28 U.S.C. § 1441(a). Defendant argues that a federal district court would have jurisdiction to hear this case because it arises under the Constitution or laws of the United States. 28 U.S.C. § 1331 (federal question jurisdiction).

In order for a case to come within federal question jurisdiction of section 1331, the case must satisfy the "well-pleaded complaint rule." *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California,* 103 S.Ct. 2841, 2846-47 (1983); *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908). The well-pleaded complaint rule requires that federal jurisdiction be established solely from the face of the plaintiff's complaint. Thus federal issues raised by way of defenses cannot establish federal question jurisdiction. *E.g., Franchise Tax Board,* 103 S.Ct. at 2846-47.

If federal law creates a plaintiff's cause of action, then the case clearly arises under federal law, and jurisdiction exists pursuant to section 1331. Even where state law creates a plaintiff's cause of action, a case may nevertheless arise under federal law in limited circumstances. Cases based on state causes of action still arise under federal law if the vindication of a state law created right necessarily turns on a construction of federal law. *See Franchise Tax Board,* 103 S.Ct. at 2846. "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Board,* 103 S.Ct. at 2847, *quoting Gully v. First National Bank,* 299 U.S. 109, 112 (1936). The federal issue upon which a plaintiff's right to relief under state law depends, moreover, must be "a substantial question of federal law."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1985 WL 6424 (D.Minn.)
(Cite as: Not Reported in F.Supp.)

*Franchise Tax Board,* 103 S.Ct. at 2848.

*3 In the instant case, plaintiff's causes of action, fraud, negligence, and/or breach of contract, are all traditional state law claims. Defendant argues, however, that in order for plaintiff to prevail on these state law causes of action, plaintiff must obtain a favorable resolution of issues of federal law, namely, bankruptcy law. Plaintiff responds that the bankruptcy proceedings are only in the background of the present action, and that resolution of a bankruptcy law question is not essential in order for plaintiff to prevail. Plaintiff notes that resolution of bankruptcy law issues, if essential at all, would be necessary only to certain defenses defendant seeks to raise. Issues of federal law present only in defenses, of course, will not support removal. *Franchise Tax Board,* 103 S.Ct. at 2847 n. 9. The thrust of plaintiff's response, moreover, is that defendant is trying to obfuscate the simple truth that plaintiff's claims do not involve necessary resolutions of bankruptcy law.

No doubt, the Wickes bankruptcy proceedings provide a historical backdrop to the present action, but questions of federal law "lurking in the background" do not give rise to federal jurisdiction. *Gully,* 299 U.S. at 117. Most of defendant's arguments do relate only to defenses defendant could raise. For instance, defendant claims that under the settlement agreement reached in the bankruptcy proceedings, defendant will be able to obtain indemnification from third parties. Defendant adds that, under the terms of the settlement agreement, plaintiff's claims will be reduced by the amount the third parties pay to defendant. Even if this interpretation of the settlement agreement is correct, the settlement agreement and the bankruptcy laws' relevance to the indemnification issue, both involve affirmative defenses.

Two issues of bankruptcy law to which defendant points, however, do not fall into the category of relating only to affirmative defenses. An elaboration on plaintiff's theory of recovery is helpful in understanding these issues. Plaintiff claims that if defendant had performed its accounting duties properly, plaintiff would have

been aware of the questionableness of GCC's security interests in the GSK accounts receivable. Thus, plaintiff asserts it would have taken steps to rectify the situation by insuring the perfection of GCC's security interest prior to the commencement of the bankruptcy proceedings. If plaintiff had taken these corrective measures, plaintiff reasons, GCC would clearly have had valid security interests, *i.e.,* interests unavoidable in bankruptcy. Another possibility, asserts plaintiff, is that the corrective measures would have prevented the bankruptcy proceedings altogether. In either case, GCC would not have needed to enter into the settlement agreement. Entering into the settlement agreement, therefore, purportedly caused GCC to accept less money than it would have received if its security interests would have been clearly perfected.

*4 Recognizing plaintiff's theory of recovery, defendant argues that an essential component of the theory includes plaintiff establishing that GCC's interests were in fact avoidable under the bankruptcy laws. Defendant reasons that this determination of federal law makes plaintiff's action one arising under federal law.

Plaintiff does not question that the avoidability of GCC's security interest will be an issue, but plaintiff contends that this issue will not involve a substantial question of federal law, *see Franchise Tax Board,* 103 S.Ct. at 2848, and therefore this issue does not establish federal question jurisdiction. Under the Bankruptcy Code, security interests which are not properly perfected prior to the commencement of bankruptcy are avoidable. *See* 11 U.S.C. § 544(a). Whether security interests are properly perfected, however, depends upon state law (the state's version of the Uniform Commercial Code). Accordingly, the avoidability issue does not involve a substantial question of federal law because the real controversy surrounds state law issues of perfecting security interests. Once the state law issue is determined, the answer to whether an interest is avoidable in bankruptcy naturally follows.

The second issue defendant raises which concerns more than an affirmative defense involves causation and damages. Defendant argues that in order for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1985 WL 6424 (D.Minn.)
(Cite as: Not Reported in F.Supp.)

plaintiff to prove that defendant's alleged acts actually caused plaintiff any damage, plaintiff will have to demonstrate that it would have fared better in bankruptcy absent defendant's alleged transgressions. In other words, defendant argues that to establish causation, plaintiff must show that if plaintiff had security interests which were clearly unavoidable, plaintiff would have received more money from the debtor. Defendant further reasons that determining how plaintiff would have fared in the above situation requires determining issues of bankruptcy law, namely how the debtor's estate would have been divided under the Bankruptcy Code.

Defendant's causation and damages arguments, however, is not persuasive. Initially, plaintiff reasons that if defendant had performed its accounting duties properly, bankruptcy proceedings could have been avoided. Under this scenario, plaintiff would not have to establish what it would have received in bankruptcy to prove its damages. Since plaintiff may or may not have to show what would have happened in bankruptcy, interpretations of bankruptcy law cannot provide a basis for federal question jurisdiction. *See Gully,* 299 U.S. at 118.

Even if plaintiff having to demonstrate how it would have fared in bankruptcy was certain to be an issue at trial, this issue still would be insufficient to create federal question jurisdiction. Determining what would have transpired in bankruptcy proceedings may be an involved process, but it will entail the application of existing bankruptcy law. The parties have not indicated that any disputed issues of bankruptcy law will have to be determined in order to assess how plaintiff would have fared in bankruptcy. Defendant, therefore, has not met its burden of establishing that a substantial issue of federal law is a necessary component of plaintiff's case.[FN1]

*5 *Section 1452*

Even if removal is improper under section 1441(a), defendant argues that it may properly remove the action pursuant to 28 U.S.C. § 1452(a), which provides for removal from state courts to federal district courts where federal jurisdiction exists

under 28 U.S.C. § 1334 (bankruptcy matters). Section 1334, in turn, provides that federal district courts shall have jurisdiction over all civil proceedings arising under, arising in, or relating to Title 11 bankruptcy cases. 28 U.S.C. § 1334(b).

The present action does not arise under or in Title 11 because a bankruptcy debtor is not a party and no relief under Title 11 of the Bankruptcy Code is sought. *See State Bank of Lombard v. Chart House, Inc.,* 46 B.R. 468, 472 (N.D.Ill.1985); *see also In re S.E. Hornsby & Sons Sand and Gravel Co.,* 45 B.R. 988, 994-95 (Bankr.M.D.La.1985) (case arises under Title 11 if Title 11 creates cause of action or case concerns administrative bankruptcy matters).

Neither is the case at bar "related" to a bankruptcy proceeding. The mere existence of common issues of fact between a civil action and a bankruptcy proceeding does not mean that the former is "related " to the bankruptcy case. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984).[FN2]

The ... test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc.,* 743 F.2d at 994 (citations omitted).

Here, the present action cannot affect the rights of a bankruptcy debtor. The bankruptcy court has confirmed the reorganization plans of Wickes and its subsidiaries, and the obligations of these debtors have been discharged. Nevertheless, defendant argues that the present action could affect a debtor. Defendant reasons that if plaintiff ultimately prevails against defendant, defendant will be able to obtain a set-off against Wickes, thus reducing Wickes' assets. The present action, however, is at most a precursor to defendant's potential indemnification action against Wickes. Accordingly, the present action is not "related" to a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1985 WL 6424 (D.Minn.)
**(Cite as: Not Reported in F.Supp.)**

bankruptcy. *Pacor, Inc.,* 743 F.2d at 995.

Since the present action does not arise under, arise in, or relate to a bankruptcy case, the Court does not have jurisdiction under 28 U.S.C. § 1334(b). Jurisdiction not being present under either section 1331 or 1334(b), removal was not proper under either 28 U.S.C. § 1441 or § 1452.

Accordingly, IT IS ORDERED that this case is remanded to the Fourth Judicial District, County of Hennepin, State of Minnesota.

> FN1 In this respect, the present action is distinguishable from the three cases defendant points to as examples of state law actions involving necessary and substantial determinations of federal law. *Christopher v. Cavallo,* 662 F.2d 1082 (4th Cir.1981); *Martin-Trigona v. Brooks & Holtzman,* 551 F.Supp. 1378 (S.D.N.Y.1982); and *Sweeney v. Abramovitz,* 449 F.Supp. 213 (D.Conn.1978). In all three of these cases, an interpretation of a substantial issue of federal law was central to the question of whether substantive state law afforded the plaintiffs a cause of action. Here, a court need not refer to federal law in order to determine that plaintiff can assert state law claims based on negligence, breach of contract, and fraud.

> FN2 *Pacor, Inc.* was discussing 28 U.S.C. § 1471(b). Section 1471(b) is the predecessor of 28 U.S.C. § 1334(b), and those two provisions have the exact same language.

D.Minn.,1985.
National City Bank v. Coopers and Lybrand
Not Reported in F.Supp., 1985 WL 6424 (D.Minn.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARLENE HOPKINS, Individually, as )
Wrongful Death Heir, and as Successor-in- )
Interest to NORMAN HOPKINS, JR., )
Deceased; and MICHELLE HOPKINS, and )
MICHAEL HOPKINS, as Legal Heirs of )
NORMAN HOPKINS, Deceased, and THE )
FLINTKOTE COMPANY, THE OFFICIAL )
COMMITTEE OF CLAIMANTS, and )
JAMES J. MCMONAGLE as the LEGAL )
REPRESENTATIVE FOR FUTURE )
ASBESTSOS PERSONAL INJURY )
CLAIMANTS )
           Plaintiffs, )
   vs. ) Civil Action No. 1:06-CV-00298-JJF
  )
PLANT INSULATION COMPANY; )
UNIROYAL HOLDING, INC.; IMPERIAL )
TOBACCO CANADA LIMITED; )
SULLIVAN & CROMWELL LLP; and )
DOES 1 through 100, )
  )
          Defendants. )

## CERTIFICATE OF SERVICE

I, James E. O'Neill, hereby certify that on the 19th day of May 2006, I caused a

copy of the following document(s) to be served in the manner indicated on the individuals on the

attached service list(s):

    1.    **Debtor's Opposition to Emergency Petition of Imperial Tobacco Canada Limited for an Order of Transfer Pursuant to 28 U.S.C. § 157(B)(5)**

    2.    **Declaration of David J. Gordon in Support of Debtor's Opposition to Emergency Petition of Imperial Tobacco Canada Limited for an Order of Transfer Pursuant to 28 U.S.C. § 157(B)(5)**

    3.    **Declaration of Alan R. Brayton in Support of Debtor's Opposition to Emergency Petition of Imperial Tobacco Canada Limited for an Order of Transfer Pursuant to 28 U.S.C. § 157(B)(5)**

4.    **Declaration of Alan Pedlar in Support of Debtor's Opposition to Emergency Petition of Imperial Tobacco Canada Limited for an Order of Transfer Pursuant to 28 U.S.C. § 157(B)(5)**

James E. O'Neill (Bar No. 4042)

Flintkote District Court Service List
Case No. 06-298-JJF
Doc. # 118154
005 – Hand Delivery
013 – First Class Mail


*HAND DELIVERY*
*(Co-Counsel for Debtors and Plaintiff,*
*The Flintkote Company)*
James E. O'Neill
Laura Davis Jones
Pachulski, Stang, Ziehl, Young, Jones
& Weintraub P.C.
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

*HAND DELIVERY*
*(Office of the United States Trustee)*
David Klauder, Esquire
Office of the United States Trustee
844 King Street, Lock Box 35, Room 2311
Wilmington, DE  19801

*HAND DELIVERY*
*(Counsel to the Official Committee of*
*Asbestos Personal Injury Claimants)*
Marla Eskin, Esquire
Campbell & Levine, LLC
800 King Street, Ste 300
Wilmington, DE  19801

*HAND DELIVERY*
*(Counsel to the Legal Representative*
*for Future Claimants)*
Edwin J. Harron
Young Conaway Stargatt & Taylor
1000 West Street, 17th Floor
Wilmington, DE 19801

*HAND DELIVERY*
*(Counsel for Defendant Imperial*
*Tobacco Canada Limited)*
Stephen M. Miller
Brett D. Fallon
Carl N. Kunz, III
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801

*FIRST CLASS MAIL*
*(Co-Counsel for Defendant Imperial*
*Tobacco Canada Limited)*
L. Joseph Loveland
James A. Pardo, Jr.
Mark M. Maloney
King & Spalding LLP
1180 Peachtree Street, N.W.
Atlanta, GA  30309

*FIRST CLASS MAIL*
*(Co-Counsel for Debtors and*
*Plaintiff, The Flintkote Company)*
Jeffrey E. Bjork, Esquire
Sidley Austin Brown & Wood LLP
555 W. 5th Street, Suite 4000
Los Angeles, California 90013

*FIRST CLASS MAIL*
*(Counsel to the Official Committee of*
*Asbestos Personal Injury Claimants)*
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY  10152-3500

*FIRST CLASS MAIL*
*(Counsel to the Official Committee of*
*Asbestos Personal Injury Claimants)*
Philip E. Milch
Campbell & Levine, LLC
1700 Grant Building, 310 Grant Street
Pittsburgh, PA  15219

*FIRST CLASS MAIL*
*(Counsel to the Legal Representative*
*for Future Claimants)*
Matthew E. Albers
Vorys, Sater, Seymour & Pease LLP
2100 One Cleveland Ctr.
1375 E. 9th St.
Cleveland, Ohio 44114

*FIRST CLASS MAIL*
*(Counsel for Plaintiff, The Flintkote*
*Company)*
Stephen M. Snyder, Esquire
Snyder Miller & Orton LLP
111 Sutter, Ste 1950
San Francisco, CA  94104

*FIRST CLASS MAIL*
*(Counsel for Plaintiff, The Flintkote*
*Company)*
Eliot S. Jubelirer
Morgenstein & Jubelirer
One Market
Spear Street Tower. 32nd Floor
San Francisco, CA  94105

*FIRST CLASS MAIL*
*(Counsel for Plaintiff, The Flintkote*
*Company)*
Alan Pedlar, Esquire
The Law Office of Alan Pedlar
1112 Via Malibu
Aptos, CA  95083

*FIRST CLASS MAIL*
*(Counsel for Plaintiff, The Flintkote*
*Company)*
Kelly C. Wooster, Esquire
112 Rock Creek Court
P.O. Box 62
Copperopolis, CA  95228

*FIRST CLASS MAIL*
*(Counsel for Plaintiff Marlene Hopkins,*
*Michelle Hopkins and Michael Hopkins)*
Gilbert L. Purcell, Esquire
Brayton Purcell, LLP
222 Rush Landing Road
Novaro, CA  94948

*FIRST CLASS MAIL*
*(Counsel for Sullivan & Cromwell)*
Gregory D. Phillips
Rohit K. Single
Brad D. Brian
Munger, Tolles & Olsen LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071

*FIRST CLASS MAIL*
*(Counsel for Plant Insulation)*
Monte S. Travis
Travis & Pon
2001 Fillmore Street
San Francisco, CA  94115

*FIRST CLASS MAIL*
*(Counsel for Uniroyal Holdings, Inc.)*
Nancy E. Hudgins
Uniroyal Holdings, Inc.
565 Commercial Street, 4th Floor
San Francisco, CA  94111

DOCS_DE:118154.1