IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARLENE HOPKINS, individually,:
as Wrongful Death Heir, and as:
Successor-in-Interest to          :
NORMAN HOPKINS, JR., Deceased,:
and MICHELLE HOPKINS, and         :
MICHAEL HOPKINS, as Legal         :
Heirs of NORMAN HOPKINS,          :
Deceased, THE FLINTKOTE           :
COMPANY, THE OFFICIAL             :
COMMITTEE OF THE ASBESTOS         :
PERSONAL INJURY CLAIMANTS,        :
and JAMES J. McMONAGLE as the :
LEGAL REPRESENTATIVE FOR          :
FUTURE ASBESTOS PERSONAL          :
INJURY CLAIMANTS,                 :
                                  :
                Plaintiffs,       :
                                  :
        v.                        :    Civil Action No. 06-298-JJF
                                  :
PLANT INSULATION COMPANY;         :
UNIROYAL HOLDING, INC.;           :
IMPERIAL TOBACCO CANADA           :
LIMITED; SULLIVAN & CROMWELL      :
LLP; and DOES 1 through 100,      :
                                  :
                Defendants.       :

_____

Stephen M. Miller, Esquire and Brett D. Fallon, Esquire of
MORRIS, JAMES, HITCHENS & WILLIAMS LLP, Wilmington, Delaware.
Of Counsel:  L. Joseph Loveland, Esquire; James A. Pardo, Jr.
Esquire and Mark M. Maloney, Esquire of KING & SPALDING LLP,
Atlanta, Georgia.
Attorneys for Imperial Tobacco Canada Limited.

Laura Davis Jones, Esquire and James E. O'Neill, Esquire of
PACHULSKI STAND ZIEHL YOUNG JONES & WEINTRAUB LLP, Wilmington,
Delaware.
Of Counsel:  Stephen M. Snyder, Esquire and James L. Miller,
Esquire of SNYDER MILLER & ORTON LLP, San Francisco, California.
Eliot S. Jubelirer, Esquire and Jean L. Bertrand, Esquire of
MORGENSTEIN & JUBELIRER, San Francisco, California.

Kelly C. Wooster, Esquire, of KELLY C. WOOSTER, ESQ.,
Copperopolis, California.
THE LAW OFFICE OF ALAN PEDLAR, A PROFESSIONAL CORPORATION, Aptos,
California.
Attorneys for Plaintiffs.

---

## MEMORANDUM OPINION

June 13, 2006
Wilmington, Delaware

*Joseph J. Farnan Jr.*

Farnan, District Judge.

Pending before the Court is the Emergency Petition Of Imperial Tobacco Canada Limited For An Order Of Transfer Pursuant To 28 U.S.C. § 157(B)(5) (D.I. 1). For the reasons discussed, the Court will exercise its discretion to abstain from exercising jurisdiction over the California Action and deny the Petition requesting transfer under Section 157(b)(5).

**BACKGROUND**

## I.    Procedural Background

On May 1, 2004, The Flintkote Company ("Flintkote") filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Flintkote's bankruptcy case is currently proceeding in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") before the Honorable Judith K. Fitzgerald. During the course of Flintkote's bankruptcy proceedings, the Bankruptcy Court appointed an Official Asbestos Claimants' Committee (the "ACC") and a Future Claims Representative (the "FCR").

Nearly two years later, Flintkote, together with the ACC, the FCR, and Marlene Hopkins, Michelle Hopkins and Michael Hopkins[1] (the "Hopkins Family"), filed a complaint in the Superior Court of California against Imperial Tobacco Canada

---

[1]    The Hopkins Family are the heirs of Norman Hopkins, Jr. who died of mesothelioma.

1

Limited ("ITCAN"), Plant Insulation Company ("Plant"), Uniroyal
Holding, Inc. ("Uniroyal"), Sullivan & Cromwell LLP ("S&C") and
Does 1 through 100 (the "California Action").  Through the
California Action, Flintkote and the other plaintiffs seek to
demonstrate that ITCAN has alter-ego liability for any
obligations of Flintkote to asbestos claimants, on the grounds
that ITCAN, as the former parent of Flintkote, stripped Flintkote
of $525,000,000, leaving Flintkote unable to pay billions of
dollars owed to asbestos claimants.[2]

Shortly after the filing of the California State Action, the
Bankruptcy Court approved Flintkote's retention of San Francisco
area counsel to litigate the state action, and a joint
prosecution agreement by which the state action would be
prosecuted by Flintkote and the legal representative of future
and current asbestos claimants for the benefit of Flintkote.

On May 5, 2006, ITCAN removed the California Action to the
United States District Court for the Northern District of
California (the "California District Court"), and filed a motion
to stay and transfer the action to this Court.  In response,
Flintkote and the other plaintiffs have filed a motion to remand

_____

[2]    To allow the California Action to proceed, the
Bankruptcy Court approved the "Agreement Providing For Joint
Pursuant Of Alter Ego Remedies" (the "Alter Ego Agreement") which
modified the automatic stay to allow the Hopkins family to pursue
alter ego remedies against ITCAN as provided in the Alter Ego
Agreement between the Flintkote Company and the Hopkins Family.

the case from the California District Court back to the California Superior Court.

Simultaneously with its filings in the California District Court, ITCAN also filed the instant Emergency Petition for transfer pursuant to 28 U.S.C. § 157(b)(5). Briefing has been completed on the Petition, and therefore, the matter is ripe for the Court's review.

## II.  Factual Background

By way of brief factual background, the Court notes that the Complaint in the California Action alleges 16 causes of action based on state law theories of recovery. The first seven claims alleged in the Complaint are asbestos wrongful death claims based on negligence, products liability, loss of consortium, and contractor liability, asserted by the Hopkins Family against Plant, Uniroyal and ITCAN as the alter-ego of Flintkote. These claims are based on the death of Norman Hopkins, Jr. on September 27, 2005, due to mesothelioma allegedly contracted by exposure to asbestos-containing products manufactured and/or sold by Plant, Uniroyal and Flintkote. The Hopkins Family are residents of California. Flintkote is a Delaware corporation headquartered in San Francisco, and Plant is a California Corporation. ITCAN is a Canadian corporation alleged to be a manufacturer of cigarettes and other tobacco products.

3

Of the remaining nine claims, seven are asserted by Flintkote, in its own right or through the assertion of the rights of other creditors, against ITCAN for a declaration of alter-ego liability, receiving illegal dividends, recovery of fraudulent transfers, breach of fiduciary duty, constructive trust, restitution, and declaratory relief. One claim is also asserted by Flintkote against S&C for breach of duty and negligence as a result of S&C's representation of Flintkote in the late 1980s.

**DISCUSSION**

**I.    The Parties' Contentions**

By their Motion, ITCAN requests the Court to transfer the California Action to this Court. ITCAN contends that Delaware is the appropriate venue for the California Action, because the California Action is an integral part of Flintkote's bankruptcy proceedings and its reorganization plans. Specifically, ITCAN contends that Flintkote ultimately intends to transfer the California Action to an asbestos personal injury trust created under Section 524(g) of the Bankruptcy Code pursuant to a confirmed plan of reorganization. ITCAN points out that the creation of such a trust and any possible settlement of the California Action will both require the approval of the Bankruptcy Court, and therefore, resolution of the entire action in this Court would promote judicial economy and prevent the

4

waste of both the parties' and the respective courts' resources. ITCAN also contends that the substantive claims of the California Action are better suited for resolution in Delaware, because (1) they are interwoven with the dividend recovery claims which impact Flintkote's bankruptcy estate, and (2) they seek to disregard the corporate form of Flintkote, a Delaware corporation.

In response, Flintkote contends that a transfer of the California Action to Delaware contravenes the purpose of Section 157(b)(5), which is to assist a debtor in managing and centralizing personal injury tort claims brought against the debtor.  Because Flintkote is the debtor in this case, Flintkote contends that its choice of forum should be respected, and Section 157(b)(5), which is supposed to favor the debtor, should not be used against it to effectuate a transfer which it opposes. Flintkote also contends that California is the appropriate forum to try the California Action, because the California Action (1) advances state law claims, (2) is brought by California citizens and a corporation headquartered in California against two corporations headquartered in California, and (3) the Bankruptcy Court has taken a number of measures aimed at allowing the case to proceed in California, specifically, authorizing Flintkote's retention of a California law firm and authorizing the ACC and FCR to appear in the California Action.

5

In the alternative, Flintkote contends that the Court should exercise its discretion and abstain from the transfer decision. Flintkote contends that abstention is the threshold analysis in a Section 157(b)(5) transfer motion, and that if abstention is appropriate, the Court will not need to make the other venue determinations required by Section 157(b)(5).

**II.  Whether The Court Should Transfer This Action From The California District Court To This Court Pursuant To 28 U.S.C. § 157(b)(5)**

In pertinent part, Section 157(b)(5) provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district in which the bankruptcy case is pending or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Because the Flintkote bankruptcy case is pending in the United States Bankruptcy Court for the District of Delaware, this Court has the sole authority to determine the appropriate venue for the California Action which alleges personal injury tort and wrongful death claims against, among others, the non-debtor ITCAN. See A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir. 1986) (recognizing that Section 157(b) expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts).  In making a determination as to venue, the Court has three options.  The Court may try the case in this jurisdiction, transfer the case to

6

the district in which the claim arose, or abstain from adjudicating the issue.  See In re Pan American Corp., 950 F.2d 839, 844 (2d Cir. 1991) (recognizing that, despite the use of the mandatory language "shall order" in § 157(b)(5), that section "has consistently been construed to leave personal injury cases where they are pending" and allow the district court to abstain from exercising jurisdiction).

    A.    Whether The Court Has Subject Matter Jurisdiction Over This Action Under Section 1334(b)

    As a threshold matter, the Court must begin its analysis with a determination of whether the Court has subject matter jurisdiction over the California Action.[3]  See In re Dow Corning Corp., 86 F.3d 482, 488 (6th Cir. 1996).  By its Petition, ITCAN contends that the Court has subject matter jurisdiction over the California Action under the "related to" prong of 28 U.S.C. § 1334(b).[4]

---

    [3]    The parties debate whether the Court should conduct the abstention analysis before the subject matter jurisdiction analysis.  In reviewing the applicable case law, the Court notes that several courts proceed to abstention without considering subject matter jurisdiction.  However, the Court is persuaded that subject matter jurisdiction is the threshold question that must precede any analysis of abstention.  See generally, Thomas B. Bennett, Removal, Remand, and Abstention Related To Bankruptcies:  Yet Another Litigation Quagmire!, 27 Cumb. L. Rev. 1037 (1997).

    [4]    In pertinent part, Section 1334(b) provides:

    Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have

7

Flintkote concedes that its claims against ITCAN, including
its causes of action under Section 544 of the Bankruptcy Code,
fall within the Court's "related to" jurisdiction.  (D.I. 17 at
33) ("Flintkote agrees that _its_ claims against [ITCAN], are
'related to' its bankruptcy case under the broad definition
afforded to that term under applicable law.")  (emphasis in
original).  However, Flintkote disagrees with ITCAN's assertion
that the Hopkins Family claims against ITCAN are "related to" the
Flintktoke Chapter 11 proceeding.[5]  Analogizing ITCAN to an
insurer with adequate policy limits who denies coverage,
Flintkote contends that resolution of the Hopkins Family claims
will have no direct effect on Flintkote's Chapter 11 case,
regardless of whether the Hopkins Family wins or loses.  If the
Hopkins Family loses, there will be no impact on the estate. If
the Hopkins Family wins, then ITCAN will pay the judgment like an
insurer would.  According to Flintkote any other impact on the

----

    original but not exclusive jurisdiction of all civil
    proceedings arising under title 11, or arising in _or_
    _related to cases under title 11._

28 U.S.C. § 1334(b) (emphasis added).

    [5]    In making this assertion, Flintkote states that ITCAN's
Section 157(b)(5) motion is not addressed to Flintkote's claims
but to the claims of the Hopkins Family against Imperial Tobacco.
Flintkote's understanding of ITCAN's motion is incorrect.  ITCAN
seeks the transfer of the entire California Action, and not
merely the Hopkins Family claims.  (D.I. 25 at 37).

estate will only come by virtue of separate independent legal
proceedings like a settlement agreement between Flintkote and
ITCAN or additional lawsuits brought by the asbestos claimants
against ITCAN in the tort system, and such independent
proceedings do not fall within "related to" jurisdiction as that
has been defined by the Third Circuit in Pacor and its progeny.

In response, ITCAN contends that the Hopkins Family claims
for alter-ego liability against ITCAN "are in fact personal
injury tort claims against Flintkote," because alter-ego
liability is based on the existence of an underlying claim, and
the Hopkins Family seeks a determination that Flintkote's actions
caused the wrongful death of Norman Hopkins.  ITCAN also contends
that the asbestos claims are interwoven with Flintkote's other
claims against ITCAN, and therefore, the Court has "related to"
subject matter jurisdiction over all the claims asserted in the
California Action.

Though not limitless, the concept of "related to"
jurisdiction has been broadly defined to encompass any civil
proceeding whose outcome "could conceivably have any effect on
the estate being administered in bankruptcy." Celotex Corp. v.
Edwards, 514 U.S. 300, 306, 308 n. 6 (1995) (citing Pacor, Inc.
v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).  An action is
"related to bankruptcy if the outcome could alter the debtor's
rights, liabilities, options, or freedom of action (either

9

positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." Id. However the question of "whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding, inquires whether the allegedly related lawsuit would affect the bankruptcy without the intervention of yet another lawsuit." In re Combustion Engineering, Inc., 391 F.3d 190, 227 (3d Cir. 2005). Moreover, the proceeding need not be against the debtor or the debtor's property to invoke "related to" jurisdiction under Section 1334(b), and "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of Section [1334]." Pacor, 743 F.2d at 994. Rather, there must be some nexus between the "related" civil proceeding and the Chapter 11 case. Id.

Reviewing the circumstances in this case in light of the applicable law, the Court concludes that the claims asserted by both Flintkote and the Hopkins Family in the California Action are "related to" Flintkote's bankruptcy proceedings for the purposes of establishing subject matter jurisdiction under Section 1334(b). As Flintkote has acknowledged, the asbestos claims asserted in the California Action are factually interwoven with the dividend recovery and malpractice claims asserted by Flintkote against ITCAN and S&C, respectively. In addition,

10

Flintkote has acknowledged that the California Action "represents
potentially the largest group of assets" of its bankruptcy
estate, and it is clear that the alter-ego claims asserted by
both Flintkote and the Hopkins Family implicate Flintkote's
underlying liability.  See Celotex, 514 U.S. at 308 n. 5
("Proceedings 'related to' the bankruptcy include (1) causes of
action owned by the debtor which become property of the estate .
. . ."); The Drexel Burnham Lambert Group, Inc. v. Vigilant Ins.
Co., 130 B.R. 405, 407 (S.D.N.Y. 1991) (concluding that outcome
of the action could conceivably have an effect on the bankrupt
estate "because the claims in this action constitute potential
assets of the estate").  Accordingly, the Court concludes that
"related to" jurisdiction exists with regard to the claims
asserted in the California Action by both Flintkote and the
Hopkins Family for the purposes of invoking a transfer of this
action pursuant to Section 157(b)(5).

> B.    Whether This Court Should Abstain From Exercising
>        Jurisdiction As Provided For In Section 1334(c)

Having concluded that jurisdiction exists under Section
1334(b), and thus, Section 157(b)(5) is properly invoked, the
Court must next consider whether abstention is appropriate under
Section 1334(c).  Section 1334(c) provides for two types of
abstention, discretionary abstention and mandatory abstention.
Mandatory abstention pursuant to Section 1334(c)(2) does not
apply to the liquidation of personal injury tort or wrongful

11

death cases, and therefore, the Court concludes that mandatory
abstention cannot be applied here.  See 28 U.S.C. 157(b)(4); Dow
Corning Corp., 86 F.3d at 497.  However, in its discretion, the
Court may abstain from hearing a case over which it has
jurisdiction pursuant to the discretionary abstention principles
set forth in Section 1331(c)(1).  Pan Am, 950 F.2d at 844; A.H.
Robins, 788 F.2d at 1010; Dow Corning, 86 F.3d at 497; Federal-
Mogul, 282 B.R. 314 (Bankr. D. Del. 2002).

In pertinent part, Section 1331(c)(1) provides:

> Nothing in this section prevents a district court in
> the interest of justice, or in the interest of comity
> with State courts or respect for State law, from
> abstaining from hearing a particular proceeding arising
> under title 11 or arising in or related to a case under
> title 11.

28 U.S.C. § 1331(c)(1).  In determining whether abstention is
appropriate, courts consider twelve factors:

> (1) the effect on the efficient administration of the
> estate; (2) the extent to which state law issues
> predominate over bankruptcy issues; (3) the difficulty
> or unsettled nature of applicable state law; (4) the
> presence of a related proceeding commenced in state
> court or other non-bankruptcy court; (5) the
> jurisdictional basis, if any, other than section 1334;
> (6) the degree of relatedness or remoteness of the
> proceeding to the main bankruptcy case; (7) the
> substance rather than the form of an asserted "core"
> proceeding; (8) the feasibility of severing state law
> claims from core bankruptcy matters to allow judgments
> to be entered in state court with enforcement left to
> the bankruptcy court; (9) the burden on the court's
> docket; (10) the likelihood that the commencement of
> the proceeding in bankruptcy court involves forum
> shopping by one of the parties; (11) the existence of a
> right to a jury trial; and (12) the presence of non-
> debtor parties.

In re Astropower Liquidating Trust, 335 B.R. 309, 330 (Bankr. D. Del. 2005) (quoting Great Am. Ins. Co. v. Mobile Tool Int'l (In re Mobile Tool Int'l), 320 B.R. 552, 556-557 (Bankr. D. Del. 2005)). Reviewing these factors in light of the circumstances in this case, the Court concludes that the majority of the factors weigh in favor of abstention. The Court's analysis as to each factor follows.

>    1.    The efficient administration of the bankruptcy
>          estate

Flintkote is the debtor in this action, and Flintkote has represented that the confirmation of a plan in its bankruptcy is not contingent upon resolution of the California Action. See D.I. 20 (Pedlar Decl.) at Exh. 3 ("Debtors' Motion For Order Approving Certain Joint Prosecution Agreements And Annulling The Automatic Stay In Connection With Dividend Recovery Litigation"), p. 5 ¶ 11; D.I. 19 (Gordon Decl.) at ¶ 6 (representing that the California Action is not central to administration of Flintkote's Chapter 11 estate, the ability of Flintkote to propose a plan of reorganization or the timing or course of which the Chapter 11 case proceeds toward confirmation). Indeed, in moving for withdrawal of the reference, ITCAN acknowledged Flintkote's representation and agreed with it, using it to support its argument in favor of withdrawal. D.I. 20 (Pedlar Decl.) at Exh. 7 ("Imperial Tobacco Canada Limited's Memorandum of Law In Support Of Its Motion To Withdraw The Reference To The Bankruptcy

13

Court With Respect To the Debtors' Joint Prosecution Motion"), p. 18.

Using the same arguments it advanced to support subject matter jurisdiction, ITCAN contends that the California Action substantially impacts Flintkote's bankruptcy case. However, the relevant inquiry for abstention is not whether the California Action impacts the bankruptcy proceedings at all, which is essentially the inquiry for establishing "related to" jurisdiction, but rather, whether the California Action will negatively impact the efficient administration of the estate. Moreover, the Court agrees with Flintkote that the primary impact of the California Action on Flintkote's bankruptcy proceeding is the potential to increase the recovery available for present and future asbestos claimants. D.I. 19 (Gordon Decl.) at ¶6. However, the Court is not persuaded that this potential impact will impede the administration of the estate, or is an otherwise sufficient impact to justify retention of federal jurisdiction over the California Action. See Drexel Burnham Lambert Group, Inc., 130 B.R. 405, 408 (S.D.N.Y. 1991) ("Because every claim of a debtor in possession is an asset of the estate, this is not sufficient to warrant the retention of federal jurisdiction over these claims."). Accordingly, the Court concludes that this factor weighs in favor of abstention.

14

2.    The extent to which state law issues predominate
      over bankruptcy issues

The Court also finds that state law issues predominate over
the bankruptcy issues raised in the state court action.    The
Complaint is based entirely on state law claims, and although
Flintkote invokes Section 544 of the Bankruptcy Code, it does so
to provide it with standing to pursue state causes of action to
avoid transfers grounded in state law.

ITCAN directs the Court to several cases for the proposition
that claims brought under Section 544 are federal question
claims.    ITCAN also contends that the threshold issue of standing
is raised by the Section 544 claims, and that this matter should
be resolved by application of federal law.    However, the Court's
jurisdiction over Section 544 claims is not exclusive, and where,
as here, state law claims predominate and the overall weight of
the applicable factors favors abstention, the Court concludes
that the presence of claims based on Section 544 is insufficient
to warrant retention of the Court's jurisdiction.    See e.g.
McCarthy v. Prince (In re McCarthy), 230 B.R. 414, 418 (9th Cir.
BAP 999) (holding that pursuit of state law fraudulent transfer
claims under § 544 is insufficient to prevent remand because
"[t]here is nothing wrong with letting a state court decide a
matter over which it has concurrent jurisdiction"); Fidelity
Nat'l Title Ins. Co. v. Franklin (In re Franklin), 179 B.R. 913,
926 (Bankr. E.D. Cal. 1995).

ITCAN also contends that the California Action implicates federal common law, because "the question of whether to allow Flintkote's claims to proceed in the United States turns on the effect to be given a Canadian statute establishing Quebec as the exclusive jurisdiction for the claims at issue in this case." (D.I. 25 at 22-23. In this regard, ITCAN contends that "[a]llowing Flintkote's claims to proceed in the United States would be an implicit determination that the Canadian statute at issue is invalid." Id. at 23. However, the Court is not persuaded that the Canadian statute is necessarily at issue in this case. According to ITCAN, the Canadian statute gives Quebec "exclusive jurisdiction" over any action involving civil liability for "damages suffered in or outside Quebec as a result of exposure to or the use of raw materials, whether processed or not, originating in Quebec." Id. Flintkote has not responded to this argument, because it was raised in ITCAN's Reply Brief; however, it is unclear to the Court whether this statute would apply to the type of alter-ego liability on the part of ITCAN alleged by Flintkote. Moreover, the Court is not persuaded that allowing Flintkote's claim to proceed here would be an implicit determination that the Canadian statute is invalid. The only case cited by ITCAN is a case published in French, that contains only a brief summary in English. According to ITCAN, the case demonstrates that "[a] foreign judgment obtained in contravention

16

of Quebec's exclusive jurisdiction will not be recognized or
enforced by Canadian courts." Id. However, the Canadian company
involved was an asbestos manufacturer.  Further, the brief
English summary of the case contains no mention of the issue of
alter-ego liability, which is the issue in this case, and the
summary certainly does not suggest that the New York court's
decision was a determination, implicit or otherwise, that the
Canadian statute at issue was invalid.  The effect that the
Canadian courts will give to a judgment entered against ITCAN in
these proceedings remains to be seen, but that question is not a
question for this Court, and is best left to the Canadian courts,
if a judgment against ITCAN is, in fact, obtained by Flintkote.
Thus, the Court is not persuaded that the impact of the Canadian
statute raises foreign law issues for this Court which trump the
state law issues in the Complaint.  Accordingly, the Court
concludes that the predominance of state law claims in this
action weighs in favor of abstention.

      3.    The difficulty or unsettled nature of applicable
           state law

     ITCAN contends that the state law issues involved in this
action will be questions of Delaware law, while Flintkote
contends that California law will apply to the claims.  There are
valid arguments on both sides of this issue, and the Court is not
inclined to engage in a lengthy choice of law analysis in the

17

context of evaluating abstention.[6]  Accordingly, the Court
concludes that this factor neither supports nor negates
abstention.

       4.    The presence of a related proceeding commenced in
            state court or other non-bankruptcy court

ITCAN contends that another related proceeding is already
pending in this case and that is the bankruptcy case pending in
this District.  However, the Court is required to consider
whether a related proceeding is pending in state court or another
non-bankruptcy court.  Here, the Hopkins Family, Flintkote and
others involved in the Flintkote Bankruptcy have filed an action
in the California Superior Court, and the Bankruptcy Court was
aware of Flintkote's decision to prosecute this matter in
California.  Indeed, the Bankruptcy Court took measures to allow
the case to proceed in California by approving Flintkote's
retention of California counsel and lifting the automatic stay.

_____

    [6]    Even if ITCAN is correct and Delaware law applies, the
Court is not persuaded that this requires a transfer of the
California Action to this Court in these circumstances.  Indeed,
the cases ITCAN cites from California demonstrate that the
California courts are capable of applying the law of the State of
Delaware.  See e.g. State Farm Mutual Automobile Ins. Co. v.
Superior Court, 114 Cal. App. 4th 434, 443, 444 (Cal. 2d Dist.
Ct. App. 2003) (applying Delaware law to lawsuit regarding the
issuance of corporate dividends); Grosset v. Wenaas, 35 Cal.
Rptr. 3d 58, 66 (Cal. 4th Dist. Ct. App. 2005) (applying Delaware
law to determine standing in derivative action).  Further, the
Court notes that ITCAN has argued before the Bankruptcy Court
that California law applies to the alter ego claims against it
which, in the Court's view, undercuts ITCAN's argument that this
factor should weigh against abstention.

Cf. Chambers v. Marathon Home Loans (In re Marathon Home Loans),
96 B.R. 296, 300 (E.D. Cal. 1989).  Accordingly, the Court
concludes that this factor favors abstention.

> 5.    The jurisdictional basis, if any, other than
>        Section 1334

ITCAN contends that this Court has jurisdiction under 28
U.S.C. § 1331 over the claims asserted by Flintkote against ITCAN
under Section 544 of the Bankruptcy Code.  However, as the Court
previously noted, the causes of action asserted by Flintkote
under Section 544 are based upon state law claims.  The Court has
found several cases concluding that Section 544 claims are
federal questions[7], and others concluding that Section 544 claims
based on state law are not federal questions.  Breed Technologies
v. Allied Signal Inc., 128 F. Supp. 2d 743, 746 (D. Del. 2001),
rev'd on other grounds, 298 F.3d 263 (3d Cir. 2002); Nat'l City
Bank v. Coopers & Lybrand, 1985 WL 6424 (D. Minn. 1985), aff'd,
802 F.2d 990 (8th Cir. 1986).  Given this divergence in the case
law, the Court is not persuaded that the basis for the exercise
of jurisdiction under Section 1331 is firm.  Moreover, as the
Court pointed out in its discussion of the predominance of state
law claims, this Court's jurisdiction over the Section 544 claims
is concurrent with the state court.  Because the existence of
federal question jurisdiction under Section 1331 is unclear, and

---

[7]    See e.g. Rahl v. Bande, 316 B.R. 127, 136-137 (S.D.N.Y.
2004); In re Finley, 286 B.R. 163, 170 (Bankr. W.D. Wash. 1992).

the primary basis for jurisdiction, without a doubt, is Section 1334(b), the Court concludes that this factor also weighs in favor of abstention.

> 6.    The degree of relatedness or remoteness to the bankruptcy case

As the Court noted in its analysis of the first factor, the degree of relatedness of this action to the bankruptcy case is slight.  The pendency of the California Action is not necessary to the development of the plan and can be pursued by representatives of the estate, by a subsequent chapter 11 or chapter 7 trustee, or by a trust established for the benefit of creditors pursuant to a confirmed plan.  While it is true that the Bankruptcy Court may have to approve any settlement of the state court action, the Court is not persuaded that that nexus is sufficient to cause this factor to weigh against abstention.  Accordingly, the Court concludes that this factor weighs in favor of abstention.

> 7.    The substance rather than the form of an asserted "core" proceeding

As discussed by the Court in the context of the other factors related to abstention, the Court has concluded that state law predominates over the issues in this case.  Indeed, Flintkote's Section 544 claims are, as a substantive matter, based on state law.  Therefore, the Court concludes that this factor also weighs in favor of abstention.

20

8.    The feasibility of severing the state law claims
       from core bankruptcy matters

Both ITCAN and Flintkote argue against severance, with the
main debate being whether the whole action should be transferred
to this Court or the whole action should be left in the
California court.  Accordingly, the Court concludes that this
factor neither weighs in favor of nor against abstention.

9.    The burden on the Court's docket

With respect to the burden that this action may place on the
Court's docket, the Court also concludes that this factor is
neutral.  On the one hand, the Court will be faced with issues
related to the Flintkote bankruptcy regardless of whether this
action is transferred to this Court or not.  On the other hand,
it is also true that this action is likely to result in prolonged
discovery and a lengthy trial implicating issues primarily of
state law.  Accordingly, the Court concludes that this factor
neither fully supports nor fully negates abstention.

10.    The likelihood of forum shopping

With respect to this element, each party accuses the other
of forum shopping.  In the Court's view, however, the suggestion
by Flintkote that ITCAN is forum shopping is more plausible than
the ITCAN's accusations against Flintkote.  Although ITCAN
accuses Flintkote of forum shopping, its argument is more fairly
premised on the fact that Flintkote selected Delaware for its
bankruptcy proceedings and should be bound to that forum.  By

21

contrast, there is a suggestion in the record that ITCAN is seeking the transfer of this action for the ulterior motive of challenging this Court's personal jurisdiction over ITCAN. Although ITCAN contends that this Court is the proper venue for this case, ITCAN purports to reserve all jurisdictional defenses stating:

> By filing this Petition, ITCAN does not, and has not agreed to, accept or attorn to the jurisdiction of any court within the United States. ITCAN reserves any and all of its rights in the underlying litigation, including the right to contest personal jurisdiction over ITCAN in the appropriate forum.

(D.I. 3 at 1 n.3). As Flintkote points out, ITCAN appeared generally in the California Action and filed an answer without moving to quash service of process. While this Court declines to comment on the California court's jurisdiction over ITCAN with any certainty, it does appear to the Court that the question of personal jurisdiction over ITCAN in this venue is more questionable.[8]

Further, there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, and ITCAN has not demonstrated to the Court's satisfaction that the presumption should be disregarded here. Piper Aircraft Co. v. Reyno, 454

---

[8]    In the Court's view, the lack of certainty regarding this Court's jurisdiction over ITCAN is yet another factor, aside from the twelve factors typically used in the abstention analysis, which weighs in favor of abstention here.

U.S. 235, 255 (1982).[9]  ITCAN contends that there is a
presumption in favor of "home court" venue in the district where
the debtor's bankruptcy proceeding is pending.  However, it
appears to the Court that the presumption to which ITCAN refers
applies in the context of considering the transfer of bankruptcy
proceedings pursuant to 28 U.S.C. § 1412.  Moreover, this
presumption, is typically used to benefit the debtor.  See e.g.
In re Harnischfeger Indus., Inc., 246 B.R. 421, 440 (Bankr. N.D.
Ala. 2000) ("[T]his presumption exists to help the debtor, not to
facilitate forum shopping for co-defendants.").  By contrast,
Flintkote, as the Debtor in this case, has selected a forum
different than its pending bankruptcy case, and the Court is not
persuaded that the home court presumption should be used against
the Debtor to invalidate its choice of forum for litigation in
these circumstances.[10]

    11.  The existence of a right to a jury trial

    Flintkote contends that the parties to the California Action

---

[9]    Although Piper is a forum non conveniens case, courts
have considered the plaintiff's choice of forum in cases
discussing remand, see e.g. Shubert v. Roche Holding AG, 157 F.
Supp. 2d 542, 547 (E.D. Pa. 2001); Drexel, 130 B.R. at 408; and
cases discussing remand consider the same factors as those used
in the abstention analysis.  Gorse v. Long Neck, Ltd., 107 B.R.
479, 482 (D. Del. 1989).

[10]    The Court also notes that the ACC and the FCR have
joined Flintkote and the Hopkins Family as co-plaintiffs in
pursuing this litigation in California.  Thus, Flintkote's choice
of forum also has the support of the three main constituencies in
its Chapter 11 case.

have demanded a jury trial in this action, in part because of the
personal injury claims involved.  Flintkote contends that this
weighs in favor of abstention.  However, ITCAN contends that it
is unclear whether Flintkote has a right to a jury trial under
either Delaware or California law with respect to its alter ego
claims.  Regardless of whether a jury trial is needed or not,
this Court is suited as well as the California court to conduct
such a jury trial.  Accordingly, the Court concludes that this
factor is neutral with respect to the abstention analysis.

　　　12.   The presence of non-debtor parties

　　　As Flintkote points out, the Hopkins Family, Plant and ITCAN
are all non-debtor parties.  The Hopkins Family are California
residents whose lawsuit is based on activities occurring in
California.  ITCAN contends that the presence of these parties
does not weigh in favor of abstention in light of the
interrelatedness between the California Action and the bankruptcy
case.  However, the Court is not persuaded by ITCAN's argument
and has concluded that the California Action will not
significantly impact Flintkote's underlying bankruptcy.
Accordingly, the Court concludes that the presence of non-debtor
parties also weighs in favor of abstention.

　　　13.   The use of Section 157(b)(5)

　　　In addition to the preceding factors, the Court is compelled
in light of the specific circumstances in this case to discuss an

24

additional factor; specifically, the purpose and use of Section
157(b)(5).  The purpose of Section 157(b)(5) is to centralize the
administration of the bankruptcy estate and eliminate having
multiple forums adjudicate different parts of the bankruptcy
case.  The Third Circuit has not addressed the precise contours
of Section 157(b)(5); however, in those cases in which it has
been addressed, it has typically been invoked by a debtor who is
named as a defendant or co-defendant in the action.  ITCAN has
not identified, and the Court cannot locate, a single case using
Section 157(b)(5) to thwart the decision of a debtor/plaintiff to
commence an action in a jurisdiction different than where the
debtor's bankruptcy is pending.

In pointing this out, the Court is not saying that Section
157(b)(5) can never be invoked by a nondebtor.  Indeed, Section
157(b)(5) contains no language limiting its application in this
way, and the Court in <u>Dow Corning</u> stated that

> Section 157(b)(5) should be read to allow a district
> court to fix venue for cases pending against nondebtor
> defendants which are "related to" a debtor's bankruptcy
> proceedings pursuant to Section 1334(b).  This approach
> will further the prompt, fair, and complete resolution
> of all claims "related to" bankruptcy proceedings, and
> harmonize Section 1334(b)'s broad jurisdictional grant
> with the oft-stated goal of centralizing the
> administration of a bankruptcy estate.

However, in <u>Dow</u>, the nondebtor requests for transfer were only
made in cases where Dow Corning had also been named as a co-
defendant.  ITCAN also directs the Court to the Third Circuit's

25

decisions in <u>Pacor</u>, 743 F.2d at 984, and the Bankruptcy Court's

decision in <u>Federal Mogul</u>, 282 B.R. 314 (Bankr. D. Del.),

<u>mandamus denied</u>, 300 F.3d 368 (3d Cir. 2002), <u>cert.</u> <u>denied</u>, 537

U.S. 1148 (2003); however, in both of those cases the courts

denied the transfer requests of nondebtor defendants.  Indeed, it

appears to the Court that in the vast majority of those cases in

which nondebtors have requested transfers, courts have remanded

the matter after removal, or abstained from exercising

jurisdiction.  <u>See e.g.</u> <u>Arnold v. Garlock, Inc.</u>, 278 F.3d 426

(5th Cir. 2001) (denying nondebtor's transfer request under §

157(b)(4)); <u>Asbestos Litig.</u>, 271 B.R. 118, 124 (S.D.W. Va. 2001)

(remanding after removal by nondebtors); <u>Luevano v. Dow Corning</u>

<u>Corp.</u>, 183 B.R. 751, 752 (W.D. Tex. 1995) (abstaining and in the

alternative remanding in the case of removal by nondebtor co-

defendant in context of Section 157(b)(5)); <u>In re Harnischfeger</u>

<u>Indust. Inc.</u>, 246 B.R. at 439 (remanding in part due to debtor's

refusal to join in motion to transfer venue pursuant to 28 U.S.C.

§1412).  Thus, as a practical matter, it appears that motions to

transfer are typically not granted over the objection of the

debtor.  <u>Pacor</u>, 743 F.2d at 996 ("Bankruptcy jurisdiction . . .

was not conferred for the convenience of those not in bankruptcy

. . . .").  Indeed, ITCAN itself acknowledges that the debtor's

consent to the transfer may be a factor to consider in the

abstention analysis.  (D.I. 25 at 17).  In this case, Flintkote

as the Debtor, along with its major constituencies, the ACC and the FCR, oppose transfer of the California Action to Delaware. Accordingly, the Court concludes that the Debtor's opposition to the transfer, coupled with the lack of precedent for applying Section 157(b)(5) to frustrate the debtor/plaintiff's choice of forum are additional factors that weigh in favor of abstention.

      14.  Summary

In sum, the Court concludes that the relevant factors are either neutral or weigh in favor of abstention. Accordingly, the Court concludes that it should exercise its discretion to abstain from exercising jurisdiction over this matter.

CONCLUSION

For the reasons discussed, the Court will exercise its discretion to abstain from exercising jurisdiction over the California Action and deny ITCAN's Emergency Petition For An Order Of Transfer Pursuant To 28 U.S.C. § 157(b)(5).

An appropriate Order will be entered.

27